# CASES DETERMINED

IN THE

# SUPREME COURT

OF THE

# STATE OF MISSOURI

AT THE

## OCTOBER TERM, 1907.

*(Continued from Volume 206)*

## THE STATE v. AMBROSE CASEY, Appellant.

**Division Two, November 19, 1907.**

1. **LARCENY AND EMBEZZLEMENT.** While larceny and embezzlement have much in common, for the purposes of prosecutions they are uniformly recognized as distinct offenses.

2. **LARCENY: Trespass.** In every larceny there must be a trespass in the original taking of the property; that is, the felonious intent must have existed at the time of the taking. If that intent is absent, the crime is not larceny, and a conviction of larceny cannot stand.

3. **EMBEZZLEMENT: No Trespass.** Embezzlement is the fraudulent and felonious appropriation of another's property by a person to whom it has been entrusted, or into whose hands it has lawfully come.

( 1 )

State v. Casey.

4. ———: **Accessory: Convicted of Larceny.** Where the principal in the crime was guilty of embezzlement, an accessory before the fact in that embezzlement, who became the custodian of the embezzled goods lawfully in the principal's possession and assisted him in feloniously appropriating them and selling them, cannot be convicted of larceny. The principal being guilty of embezzlement, so is the accessory.

5. ———: ———: ———: **Receiving Embezzled Goods.** A driver for a transfer company, with power to accept goods for the company, received a large quantity of tobacco from a railroad company in East St. Louis to be delivered to a railroad company in St. Louis. He drove his wagon into the transfer company's barn, made a report of all other hauls by him made through the day, and went that evening to defendant's saloon and arranged with him to sell the tobacco, and the next day placed it in a room defendant had rented for the purpose. *Held*, that the driver was lawfully in possession of the tobacco as the employee of the transfer company when he hauled it into the barn and left it there, and his possession was still lawful on the next day when he took it from the barn and placed it in the rented room, and his crime was, therefore, clearly embezzlement; and defendant, who was a party to his crime in unlawfully appropriating it, on the evening before and the next morning, and who sold it and received the money, knowing it had been stolen, was also guilty of embezzlement, and his conviction of grand larceny cannot stand.

6. **CONVICTION: Of Larceny: Acquitted of Embezzlement.** Where the information in the first count charged defendant with grand larceny, and in the second count with embezzlement as an accessory with a driver who feloniously appropriated goods delivered to him to be hauled to the consignee, and defendant is acquitted on the second count and convicted on the first, he must be discharged, if his crime was embezzlement and not larceny.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale*, Judge.

REVERSED.

*C. Orrick Bishop* and *Henry M. Walsh* for appellant.

(1) The court undoubtedly erred in instructing the jury upon the evidence submitted to them that the defendant was not guilty of embezzlement, but that

they might from the facts proved find him guilty of larceny. Assuming that the evidence in the case tended to show that the defendant was guilty of either offense charged in the information, it was certainly the offense of which he was found not guilty; or, again assuming that the evidence showed that the defendant was either a principal in the second degree or an accessory before the fact, he was only guilty of the offense of which Formaneck was guilty, and that was only embezzlement, if anything. State v. Fink, 186 Mo. 50. (2) The position held by Formaneck as a driver for the transfer company was not that of a mere custodian of the goods hauled by him. He was entrusted with greater powers than a mere custodian of goods delivered on some person's order; he was an integral part of the transfer company's system. From the day he entered the employ of the company he was their agent to accept goods at certain places, and to receipt for the goods in the name of the transfer company. There was no change in the character of custody of the tobacco from the moment when Formaneck secured the shipments peaceably (that is, without trespass), and as a representative of the transfer company, up to the moment the goods were delivered to Fuelscher. The confidence reposed by the transfer company in Formaneck on the 2d day of May, 1906, was the same confidence as on the 1st day of May, 1906; on the 1st day of May, 1906, Formaneck was empowered to receive the tobacco from the Southern Railroad Company and load it on his wagon; on the 2d day of May, 1906, he was empowered to hitch to the load, which was still under his control, and to deliver according to his agreement. The conversion was not when he drove away from the warehouse in the morning, but after he had delivered a part of the shipment and then retained the balance. Until the property was delivered into the stable for Fuelscher there was no wrongful conversion. (3) "If the servant, in-

stead of delivering the property (received for his master) to his master or to another, as required by his duty, pledges it for his own debt; or runs away with it; or neglects or refuses to account for it; or otherwise wrongfully diverts its course towards its destination to make it his own; he embezzles it.'' 2 Bishop, New Criminal Law, sec. 373; Honig's Case, 78 Mo. 249; Dashman's Case, 153 Mo. 454.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1)  The evidence unquestionably established the fact that the defendant was guilty of larceny. The tobacco was lawfully in the possession of the St. Louis Transfer Company, and that company was properly termed the owner thereof, and the defendant procured said property, according to the State's testimony, for the purpose of permanently depriving the owner thereof and converting the same to his own use. In a case, similar to this one, Judge Fox, in delivering the opinion of this court, cited various authorities and held that the defendant, who was guilty of obtaining a large quantity of shoes from the possession of the Big Four Railroad, was guilty of larceny. After such an exhaustive and thorough discussion of this subject by Judge Fox, counsel for the State do not feel it necessary to further argue this point, as said case settles the question. State v. Mintz, 189 Mo. 268.  (2)  Counsel for the State insist that there was ample evidence to show that the defendant was guilty on the crime of larceny, in connection with George Franklin. Franklin was the driver of the St. Louis Transfer Company, was lawfully entrusted with the tobacco in question, and was in duty bound to deliver the same at its proper destination. If Franklin and the defendant arranged or designed a plan by which said tobacco should not be delivered at its proper destination, but sold to another party, or disposed of in any other manner, then

State v. Casey.

the defendant and Franklin were both guilty of larceny. The undisputed evidence showed that Franklin received the tobacco in East St. Louis and delivered it in his wagon at the office and stable of the St. Louis Transfer Company at 3d and Poplar streets, in the city of St. Louis, where the tobacco remained until the next morning about seven o'clock. At that time, Franklin took charge of the wagon and team, which wagon was still loaded with tobacco, and drove away, delivering a part of said tobacco at the Missouri Pacific freight office, but taking the greater portion of it to the defendant's saloon, and, under directions of the defendant, turning it over to the witness Fuelscher. The evening before, about nine o'clock, the defendant made arrangements for the sale of that very tobacco to the witness Fuelscher, made divers false statements in regard to where he had procured the tobacco, described it and agreed to deliver it to Fuelscher the next morning. In pursuance to that agreement, the tobacco was at the defendant's saloon the next morning and delivered to Fuelscher by Franklin, and the defendant received part pay therefor. This evidence was amply sufficient to justify the jury in arriving at the conclusion that the defendant and Franklin conspired together for the purpose of stealing said tobacco, and that said agreement or conspiracy was entered into prior to the time when Franklin got the tobacco at the stable of the St. Louis Transfer Company, and, therefore, prior to the time when Franklin came lawfully into the possession of said tobacco. Such an agreement between the driver and the defendant, entered into prior to the time when the driver got possession of the tobacco, brings the case clearly within the ruling of this court in the Mintz Case, supra.

GANTT, J.—On June 12, 1906, the assistant circuit attorney of St. Louis filed an information, duly

State v. Casey.

verified, charging the defendant, in the first count, with
the larceny of eighty-nine cases of Bull Durham smok-
ing tobacco and fifteen butts of seven pounds each of
Piper-Heidsieck chewing tobacco, of the value of fif-
teen hundred dollars; and, in the second count, with
aiding, assisting and abetting one Louis Formaneck,
alias George Franklin, with the embezzlement of said
described property, from the St. Louis Transfer Com-
pany, a corporation. The date of the alleged offense
was May 2, 1906. At the December term, 1906, the
defendant was tried and convicted of grand larceny.
The punishment was assessed at two years in the pen-
itentiary. The jury found the defendant not guilty
under the second count of the information. After fil-
ing formal motions for a new trial and in arrest of
judgment, which were overruled, the defendant ap-
pealed.

The State's evidence tended to prove that the St.
Louis Transfer Company was a corporation with its
principal office of business in the city of St. Louis, and
engaged in the transfer business in St. Louis and East
St. Louis. On May 1, 1906, a man who went by the
name of George Franklin, but whose real name was
Louis Formaneck, was one of the drivers of the St. Louis
Transfer Company, driving wagon number 33, and on
the said day drove one of their wagons to the freight
depot of the Southern Railroad Company at East St.
Louis and received from the agent of said railroad
eighty-nine cases of Bull Durham tobacco and fifteen
butts of seven pounds each of Piper-Heidsieck chew-
ing tobacco, for which he gave a receipt, signed George
Franklin. The freight agent instructed Franklin, alias
Formaneck, to take said tobacco to the Missouri Pacific
freight depot in St. Louis. This tobacco was then of
the reasonable market value of $1,500. Franklin, alias
Formaneck, reported at the office and stable of the
St. Louis Transfer Company, which was located at
Third and Poplar streets, at five o'clock that evening,

and turned in to Daniel Sullivan, the clerk of said office, what was called a "red sheet," which purported to give the amount of goods hauled and the number of loads, from whom received and to whom delivered on that day. The tobacco in question was never delivered to the Missouri Pacific Railroad Company, but was taken, the next morning, by Franklin, alias Formaneck, to a saloon, which was operated by the defendant on Broadway and Sixth street in said city, and turned over to the defendant. The wagon driven by Franklin, alias Formaneck, was one of the usual transfer wagons used by the St. Louis Transfer Company, and had the name of said company painted in plain letters in two places thereon. Between eight and nine o'clock on the evening of May 1, the defendant telephoned to a tobacco dealer named Fuelscher, and asked him to come to the defendant's saloon that night, saying that he had some tobacco that Fuelscher could probably use. Fuelscher walked over to the saloon and the defendant took him to one side where no one present could hear him talk, and said, "I have about one hundred boxes of 25-pound boxes of Bull Durham and I will take one thousand dollars for them." Fuelscher declined to buy, saying that he did not have the money to pay for the same. The defendant then offered to let him handle it on commission, and Fuelscher asked him the price. The defendant hesitated and did not seem to know just what was the right price to put upon it, and asked Fuelscher what was the present value of Bull Durham on the market. When Fuelscher told him it was fifty-nine cents, the defendant then agreed to sell him this lot for forty cents per pound on commission. Fuelscher then agreed to buy it if it was all right and the defendant walked out and showed him that it was still loaded on a wagon on Sixth street. Fuelscher made arrangements with Crone Brothers, who operated a livery stable and undertaking establishment, to store this tobacco in one

of their rooms; this arrangement was made the next morning. The next morning Franklin, alias Formaneck, drove one of the St. Louis Transfer wagons around to Crone's livery barn and unloaded eight-nine cases of Bull Durham smoking tobacco and fifteen butts of seven pounds each of Piper-Heidsieck chewing tobacco. The defendant had previously told Fuelscher that he had ninety-nine cases of Bull Durham tobacco. As fast as Fuelscher could sell this tobacco, he did so, and accounted to the defendant for the proceeds; the defendant urged him several times by telephone to make sales as fast as possible and send him some more money. In due course of time the Southern Railroad Company was informed of the non-delivery of this tobacco, and a tracer was started and the St. Louis Transfer Company informed of the non-delivery thereof. The driver Franklin, alias Formaneck, was arrested, and the defendant telephoned to Fuelscher to come to his saloon to see him at once. When Fuelscher visited the defendant, the defendant said that that transfer driver had been "pinched" for selling that tobacco. Fuelscher expressed surprise, and wanted to know if there was anything crooked about the transaction, to which the defendant replied that there was not; that he had purchased the same at an auction sale, a wreckage sale, from the railroad company, and bought it very cheap. He further said that this driver would not "squeal" on them. This conversation occurred Saturday night, June 9, 1906. Fearing that something was wrong, Fuelscher visited the offices of the St. Louis Transfer Company on Monday morning and told them of his purchase of the tobacco from the defendant on the night of May 1, 1906. The police officer was sent to see the defendant at his saloon, and, on asking about the tobacco, he denied all knowledge of any purchase by him or sale by him to Fuelscher. The defendant was arrested and taken before the chief of detectives, Desmond, at his office, and was informed that Fuel-

scher had told of the purchase of the tobacco from the defendant and had receipts from the defendant for the payments therefor. The defendant at first denied his signatures, but afterwards admitted that he had given Fuelscher receipts to the amount of $250, but that the same was for borrowed money which he had loaned Fuelscher. On being told later on that Fuelscher had receipts amounting to $350, the defendant said that the additional $100 was for interest on the $250. The defendant later on saw Fuelscher and asked Fuelscher to join with him in making that statement. Fuelscher, however, denied the borrowing of any money from the defendant, and produced the receipts and testified that they were for payments made by him to defendant for tobacco. The receipts were dated May 2nd, May 5th, May 8th, May 12th, May 19th, May 23rd and June 2nd, and purported to be on account of Durham tobacco. The tobacco that Fuelscher then had on hands and all that he could get of the eighty-nine cases, he returned to the St. Louis Transfer Company, and paid said company a part of the value of what he had sold.

The defendant testified that George Franklin, alias Louis Formaneck, came to his saloon on the 1st or 2nd of May and represented to him that he had some Bull Durham smoking tobacco for sale, and would like to sell the defendant a wagon-load of it. The defendant declined, saying that he did not sell five pounds of Bull Durham in a month, when Franklin asked him if he knew anybody who would buy it. The defendant suggested Fuelscher, and Franklin asked defendant to telephone Fuelscher and see if he would buy it. Defendant asked Franklin where he got so much tobacco, and Franklin said he bought it in salvage, that the tobacco was supposed to be slightly wet, as it had come out of a freight wreck. At the time defendant recommended Fuelscher he remarked to Franklin that the

only drawback was that Fuelscher was not worth any money.

In a little while, Fuelscher came to defendant's saloon and had a talk with Franklin and then applied to defendant for a loan of $250 to bind the sale. The defendant declined to loan any money, but Fuelscher promised to give him one hundred dollars for making the loan, so the defendant concluded to do so. The defendant then went up stairs and talked to his wife, who had the money and who objected at first to making the loan. She finally concluded to do so and gave the defendant $250 in cash, which he straightway handed to Fuelscher. The defendant denied all knowledge of the tobacco being stolen, but did not deny his signature to the receipts offered in evidence, neither did he deny the contradictory and false statements made by him at the time of and after his arrest. The defendant offered one Collinson, who was his bartender at the time, and who testified that he saw the defendant get the money from the defendant's wife and loan the same to Fuelscher. Another gentleman testified in behalf of defendant that he was in defendant's saloon at the same time and saw the defendant get some money from his wife and loan to Fuelscher; but neither knew the terms upon which the same was loaned. The defendant's wife, for some reason, did not testify.

Other facts may be noted in the further consideration of the cause, in connection with the instructions of the court, and the assignments of error.

I.  The pivotal question in this case is, conceding that the evidence in the case was sufficient to establish the guilt of the defendant of either of the offenses charged in the information, of which was he guilty, grand larceny or embezzlement? The distinction between larceny and embezzlement is one fully recognized in the criminal law of this State as well as in England. While the two offenses have much in com-

mon, for the purpose of prosecution they have uniformly been regarded as distinct. In every larceny there must be a trespass in the original taking of the property; that is, in larceny the felonious intent must have existed at the time of the taking. [State v. Shermer, 55 Mo. 83, and cases cited; State v. Ware, 62 Mo. l. c. 602.] Whereas embezzlement is the fraudulent and felonious appropriation of another's property by a person to whom it has been intrusted, or into whose hands it has lawfully come.

Section 1912, Revised Statutes 1899, defines the offense in these words: "If any agent, clerk, apprentice, servant or collector of any private person, or of any co-partnership, except persons so employed under the age of sixteen years, or if any officer, agent, clerk, servant or collector of any incorporated company, or any person employed in any such capacity, shall embezzle or convert to his own use, or shall take, make way with or secrete, with intent to embezzle or convert to his own use, without the assent of his master or employer, any money, goods, rights in action, or valuable security or effects whatsoever, belonging to any other person, which shall have come into his possession or under his care by virtue of such employment or office, he shall, upon conviction, be punished in the manner prescribed by law for stealing property of the kind or the value of the articles so embezzled, taken or secreted." And section 1916, Revised Statutes 1899, provides: "Every person who shall buy, or in any way receive, any goods, money, right in action, personal property or any valuable security or effects whatsoever, that shall have been embezzled, converted, taken or secreted contrary to the provisions of the last four sections, or that shall have been stolen from another, knowing the same to have been so embezzled, taken or secreted, or stolen, shall, upon conviction, be punished in the same manner and to the same extent as for the stealing the money,

property or other thing so bought or received.'' In the case at bar, as already said, there are two counts, one charging the defendant with grand larceny of the tobacco, and the other charging that one Louis Formaneck being then and there the agent and servant of the transfer company, then and there by virtue of such employment, did have in his possession and under his care and control the said tobacco, did unlawfully, feloniously and intentionally embezzle and convert to his own use, without assent of the said transfer company, the said tobacco with the unlawful, felonious and fraudulent intent to deprive the owner, the said transfer company, of the use thereof, and that the defendant, Casey, then and there feloniously was present aiding, abetting and assisting the said Formaneck, the said embezzlement to do and commit. It seems too clear for controversy, that if defendant was guilty either as a principal in the second count, or as an accessory before the fact, he was only guilty of the offense of which Formaneck was guilty. In State v. Fink, 186 Mo. 50, Fink was accused and convicted of the offense of receiving stolen property knowing the same to have been stolen. It appeared in that case that a driver named Wheeler was the employee of the transfer company, whose duties were like those of Formaneck in this case, to drive his wagon to the railroad depots in East St. Louis and there receive freight consigned to St. Louis and deliver it to the various consignees in St. Louis. He received a large quantity of cigars from the Big Four Railroad Company in East St. Louis to be delivered in St. Louis, and instead of delivering the cigars to the consignees, he took them to the defendant Fink, who there received them knowing that it was not his property and that Wheeler had no right to deliver the property to him for any purpose. Upon that state of facts, this court said: ''That there was no larceny by Wheeler from the railroad company is too clear for discussion.

The railroad company was authorized to deliver the goods to Wheeler, who was the agent and driver for the transfer company, and Wheeler, as such driver, had the right to receive the property for the transfer company; hence the receipt and possession by Wheeler from the railroad company was a lawful possession by virtue of his employment. After the railroad company delivered the goods from its depot to Wheeler, the driver for the transfer company, who was authorized to receive them, its responsibility for the goods or the possession of them ended. Wheeler did not steal the goods from the railroad company, for, under the facts in this case, he was authorized to receive them, and if he received the goods, as indicated by the testimony, by virtue of his employment as agent or driver for the transfer company, and appropriated the goods to his own use, clearly his offense was that of embezzlement and falls within the terms of section 1912, Revised Statutes 1899. . . . It may be said that Wheeler, at the time he received the goods from the railroad company, had the intent of appropriating them to his own use; that may be true; but that does not alter the fact that he had the right to receive them and did receive them by virtue of his employment, and his appropriation of them makes his offense that of embezzlement." In this case, Formaneck received the tobacco in question from the Southern Railroad Company in East St. Louis to deliver it to the Missouri Pacific Railroad Company in St. Louis, just as Wheeler as the employee of the transfer company received the cigars from the Big Four Railroad Company to deliver to the consignee in that case, and then with the knowledge, aid and assistance of defendant Casey, converted the tobacco feloniously to his own use, and he and the defendant were guilty of embezzlement, unless it can be said that the fact that because when Formaneck reached St. Louis in the eve-

ning of May 1st, 1906, it was too late to deliver the
goods to the Missouri Pacific Railroad Company, and
for that reason he drove his team to the warehouse of
his employer, the transfer company, to leave the team
and the tobacco there for the night, and after having
left the team and tobacco there, went to see the defend-
ant, Casey, and he and Casey that night entered into the
joint criminal arrangement of appropriating the to-
bacco, and that when Formaneck went to the ware-
house of the transfer company the next morning and
took charge of the team and the tobacco, this was a
new caption with a felonious intent on the part of For-
maneck and defendant to convert the tobacco to their
own use and to deprive the owner of it, upon the doc
trine of the common law as announced in Pear's case,
2 East's P. C. 685, in which it was held that the hiring
of a horse on pretence of taking a journey, but in
truth with intent to steal it, and evidencing such felon-
ious intent by selling the horse, was larceny. To the
same effect was Spencer's case, Lew. C. C. 197; State
v. Williams, 35 Mo. 229. In the last-mentioned case it
was said by this court, however, "We do not contend
that a bailce who obtains possession without a fraud-
ulent intent can"t be charged with larceny by reason
of subsequent conversion to his own use, but we hold
that if he obtains possession by delivery under a pre-
tence of hiring, but with the actual design of depriving
the owner of his property, he is guilty of the crime of
stealing." That Formaneck received these goods from
the railroad company lawfully and by virtue of his
employment on the first of May, there can be no doubt,
and there was no evidence tending to show any inten-
tion on his part to feloniously convert the tobacco to
his own use until the night after he had left his team
and the tobacco in the transfer company's warehouse.
Did the mere fact that he left the tobacco and his team
at the warehouse of the transfer company that night

for convenience or from necessity and returned the next morning and started with his team and the tobacco intact, change his relationship to the transfer company? The record is absolutely barren of any instructions to him from any one having authority, to do anything different from the instructions he had received in East St. Louis at the Southern Railroad Company depot on the first of May, 1906, and there is absolutely no evidence to show that his agency had been changed in any manner. On the contrary, all the testimony shows there was no change in the character of the custody of the tobacco by Formaneck from the time he lawfully received the same from the Southern Railroad Company by virtue of his employment as teamster for the transfer company, up to the time he delivered the goods to Fuelscher. The confidence and trust reposed in him by the transfer company on the morning of the second of May, 1906, was the same which had been confided in him on the previous afternoon, and that was to receive the tobacco from the Southern Railroad Company and deliver it to the Missouri Pacific Railroad Company. And we can discover no substantial ground upon which to base the contention of the State of a new and separate felonious caption of goods, but in our opinion it is a case of a receipt by the servant of the transfer company of property lawfully intrusted to his care and the felonious conversion by him and the defendant subsequently of the same property and their offense was embezzlement and not larceny. In a word, we think that the decision in State v. Fink, 186 Mo. 50, is controlling upon the facts of this case, and that no sound distinction can be made between the two. On the other hand, this case is distinguishable from the ruling in State v. Mintz, 189 Mo. 268. In that case the original caption was felonious and fraudulent and with the intent to steal, and therein lies the distinction between this case and that; that was larceny, and this

is embezzlement.   Having reached this conclusion, it becomes unnecessary to examine the other assignments of error.   Under the instructions of the court the jury found the defendant not guilty of embezzlement or of aiding, abetting or assisting Formaneck in the commission of embezzlement, and hence this cause cannot be remanded for the purpose of a trial of the defendant on that charge.   As the testimony, in our opinion, was wholly insufficient to sustain the charge of larceny of which he was convicted, and as he cannot be tried for embezzlement, the judgment of the circuit court is reversed and the prisoner discharged.

   *Fox, P. J.,* and *Burgess, J.,* concur.