THE STATE v. LEE GULLEY, Appellant.

Division Two, December 4, 1917.

1. APPEAL: No Counsel for Appellant: Review of Record. Notwithstanding appellant in a criminal case is not represented by counsel, the appellate court will, following the mandate of the statute, review the record to the extent of ruling any error properly assigned in the motion for a new trial.

2. INSTRUCTION: Credibility of Defendant and Wife. It is not error to refuse an instruction on the weight and credibility of the defendant's testimony or on that of his wife, although requested by defendant; on the contrary, the giving of such an instruction would be reversible error. [Following State v. Finkelstein, 269 Mo. 612.]

3. ———: Refusing Defendant's. It is not error to refuse defendant's requested instructions if the court has already fully and properly instructed on the subjects covered by them.

4. AGE OF PROSECUTRIX: Testimony of Aunt. A sister of prosecutrix's mother, and therefore within the purview of the law a member of the mother's family, which fact in a proper situation renders even hearsay declarations admissible in proof of age and pedigree, is a competent witness to testify as to the age of prosecutrix at the time of the assault with intent to rape.

5. ———: Family Bible Record: Cumulative Evidence. Where prosecutrix's age has not been disputed and has already been shown by two uncontradicted and competent witnesses, the admission in evidence of a bare Bible record showing the name of prosecutrix and the day, month and year of her birth, made by her aunt, among entries relating to the aunt's own children, was so far cumulative as not to constitute reversible error, whether or not the entry was of itself incompetent—a question not determined.

6. ACCESSORY: Of Father to Rape of Daughter: Substantial Evidence. If upon a careful examination of the acts, behavior and language of the father, charged with being an accessory to an assault upon his daughter less than fifteen years of age with intent to rape, it appears to the court that his language may well have been construed to have no other meaning than that the child was to be sent up to the railway boarding car for the purpose and upon a bargain that the cook and his assistant, one or both, might have sexual intercourse with her, and she was sent and the assault made or attempted, the question of the father's

guilt becomes an issue for the jury to determine, for these facts constitute substantial evidence.

7. ——: ——: No Force. And though it may well be that neither the said cook, nor his assistant who committed the assault, nor the father, their accomplice, had in mind the use or necessity for force in accomplishing the design of the cook or his assistant to have sexual intercourse with the child, that fact does not mitigate the offense of the · father in aiding and abetting the assault, since, the child being under the age of consent, neither force nor the lack of it cuts any figure in the case.

8. APPELLATE PRACTICE: Substantial Evidence. If the acts of defendant were obviously susceptible of the construction that defendant is guilty of the crime charged they constitute substantial evidence of his guilt, and the question of his guilt then becomes one of fact for the jury to decide, and not one of law for the appellate court to determine.

Appeal from Lafayette Circuit Court.—*Hon. John A. Rich*, Judge.

AFFIRMED.

*Patrick T. O'Hern* and *Wofford & Kimbrell* for appellant.

*Frank W. McAllister*, Attorney-General, *Henry B. Hunt*, Assistant Attorney-General, and *C. P. LeMire* for the State.

(1) The court did not err in refusing defendant's instructions 11, 12, 13 and 14. (a) It would have been reversible error to give instruction No. 11. State v. Finkelstein, 269 Mo. 612. (b) Instructions 12 and 13, asked by defendant, were substantially set out in instructions 3 and 7 given. (2) The court did not err in admitting the testimony of Katie Gulley and Mrs. Emma Jenkins regarding the age of said Katie Gulley. State v. Marshall, 137 Mo. 463. (3) The introduction of Bible record kept by Emma Jenkins would not warrant a reversal where there is other clear and convincing and undisputed evidence. Beckham v. Nacke, 56 Mo. 549.

FARIS, J.—Defendant was tried in the criminal court of Lafayette County upon an indictment in two counts, charging him with being an accessory before the fact to rape and assault with intent to rape. Having been found guilty of the latter crime his punishment was assessed at imprisonment in the State Penitentiary for a term of five years. After the usual procedure he has appealed.

The facts are unique in legal annals, and present a case of such abhorrent brutality as to render them well-nigh incredible. Briefly these facts run thus: Defendant at and prior to November 26, 1915, was living with his wife and six children in the suburbs of the town of Lexington, in the abandoned office of an old coal mine, likewise abandoned. Two, at least of these children of defendant were girls; one Katie (whom we shall hereafter for brevity refer to as prosecutrix) was fourteen years and five months old at the date aforesaid; the other approaching seventeen years. Defendant, as the record shows him, was wholly worthless, drunken, and shiftless, and bore an evil reputation for morality. He drew, presumably for service in the Spanish War, a pension of eight dollars per month, which pension was too small for his support, and yet so large as to destroy his energy and ambition to support himself; hence he seems to have lived in abject poverty. Near the place of residence of defendant upon the railroad tracks there were at the date mentioned certain boarding-cars, housing laborers engaged as track repairers on the Missouri Pacific Railroad. In charge of these boarding-cars were one Duncan, the cook, and his assistant, or flunkey, Clifton Igleheart. The latter having heard on the day preceding a conversation between defendant and one Steinmetz, which he interpreted as a proposition on defendant's part to traffic in the virtue of his daughters, went to defendant and by the gift of a bottle of brandy induced him to go to the boarding-cars. Reaching these cars and entering into a conversation with Duncan and Igleheart, defendant was told to send prosecutrix and her sister up to the cars with a basket and get a ham

and certain other provisions, which Duncan exhibited to defendant. Subsequent conversation between defendant on the one part, and Duncan and Igleheart on the other, is thus related by Igleheart:

"Duncan told him that he would like for him to send the girls over to stay all night, and he said, 'No I can't send them over tonight, the girls were going to a box social,' and he says, 'Well, come up in the car, in the kitchen, and I will show you the ice box, show you how much meat we got out there; got some ham and bacon and beef,' and went out in the cooking car and Mr. Duncan offered him a bottle of beer and he said, 'no, he wouldn't drink the bottle of beer;' he said he had that brandy, he would drink the brandy. Then I asked him if he would send the girls over this evening; gave him a quarter and he said, 'Yes,' would send them over right away. So Mr. Duncan asked him if it would be all right and he said, 'Yes, it would be all right;' he said, 'You know what we want with them?' He said, 'Yes, I will send them over right away,' and he left and the girls came over to the car and I helped both of them into the kitchen, and the smallest one I told her to come into the commissary car with me."

Shortly thereafter, defendant returned to his home, called the two girls and ordered them to take a basket and go to the boarding-cars for the provisions promised to him by Duncan and Igleheart. At first the girls refused to go, but by threatening to beat them with a poker, defendant compelled them to take the basket and go up to these cars. Upon reaching the cars the prosecutrix was taken by said Igleheart to one of the sleeping apartments where the assault was committed. Since there seems to be no serious dispute as to the sufficiency of the evidence to make out an assault with intent to rape we need not take up space here to set out the details of this assault. The chief contention being, as we read the record, that the evidence of the defendant's criminal connection with this assault is too meager to sustain this conviction, and not that the evidence offered to prove the assault itself is insufficient to show the

necessary elements to warrant, or which would have warranted, the conviction of Igleheart of assault with intent to rape.

The testimony of Igleheart as to the language and solicitations of the defendant is fully corroborated by said Steinmetz, who was the predecessor of Duncan, as cook, and to whom on the day preceding this assault, defendant, in the presence and hearing of Igleheart, made a similar proposition to that which he afterwards made to Duncan and Igleheart, and upon which the latter acted.

After the assault, and when prosecutrix reached home crying and screaming, Igleheart left hurriedly and went to Kansas City, where he was arrested some forty-eight hours later. Defendant went immediately to the cars, and after cursing and abusing Duncan (Igleheart having as stated immediately fled), went to the telephone and called the officers to arrest Duncan and Igleheart.

Whether any disposition had been made of the charge against Igleheart, the record does not show. But he was a witness in the case without objection, and his fate need not therefore here concern us farther. If further facts shall become necessary we will set them out in our discussion of the case.

Defendant is not represented in this court by counsel. But in compliance with the mandate of the statute in this behalf, following such light in the pursuit of error, as is afforded us by the motion for a new trial, we have carefully examined the record.

I. Defendant requested the court to instruct the jury on (a) the weight and credibility of the defendant's testimony, and on that of defendant's wife, (b) on the presumption of defendant's innocence, and (c) on the general credibility of the witnesses and the weight to be given to their testimony. The first instruction requested was properly refused, because the giving of it would have been reversible error. [State v. Finkelstein, 269 Mo.

*Instructions.*

612.] This instruction, moreover was carelessly drawn, and bad in form, for it tells the jury how to weigh the credibility of defendant's wife, who was not a witness in the case. This of course would not have prevented the requested instruction from operating as a suggestion to the trial court to give a correct instruction, if the situation had made this incumbent.

Upon the defendant's remaining contentions of error, which are bottomed on the refusal of the court to give certain requested instructions, it is only necessary to say that the court had already fully and sufficiently instructed on the burden of proof, and the presumption of defendant's innocence, and had already given *sua sponte*, upon the question of the general weight and credibility of the witnesses, *the identical instruction* requested by defendant, and of the refusal of which he complains. It is useless to cite authorities to prove that under such circumstances no error inheres.

II. Strenuous complaint is made that the court erred in permitting a witness for the State, who was an aunt of the prosecutrix, to testify as to the age of the latter, and that it was likewise error to offer the entries of the date of prosecutrix's birth, which were made contemporaneously by this witness in a Bible. There is no doubt that in a prosecution of this sort the age of the prosecutrix may become vitally material, and that such age must be shown by the State by competent evidence. In this case, the witness who was offered to prove this fact by her oral testimony was the sister of prosecutrix's mother, and therefore a member of the latter's family, within the purview of the law, which in a proper situation renders even hearsay declarations admissible in proof of age and pedigree. [16 Cyc. 1228.] That the witness's statement as to the age of prosecutrix was competent, we think there can be no doubt. The prosecutrix had herself already testified that her age at the time the alleged assault was made on her was under fifteen years. There was no contradiction, or even attempted contradiction of the fact that prosecutrix was at the time under the age of consent, for upon

**Age of Prosecutrix.**

this question defendant offered no countervailing proof whatever.

Upon the point that the entry of the date of prosecutrix's birth, which was made by the aunt in her Bible, among entries relating to the witness's own children, was incompetent, it is enough to say that since there was no dispute about the age of prosecutrix, and since such age had already been shown by two uncontradicted and wholly competent witnesses, the offering of the bare Bible entry, which merely gave the name of prosecutrix, and the day, month and year of her birth, was under the facts so far cumulative as not to constitute reversible error. [Beckham v. Nacke, 56 Mo. 1. c. 549.] We are not to be understood as holding that this entry was not admissible. We are merely saying that its admission here was not reversible error, and leaving the point for determination when the question shall become more pertinent. It follows that this contention must be overruled.

III. Complaint is made in defendant's motion for a new trial that there is not in the case any substantial evidence of defendant's guilt. This point is Sufficient one of some difficulty. The nature of the crime Evidence. charged, and the natural abhorrence aroused thereby make it appear incredible, but upon a careful examination of the acts, behavior, and language of the defendant, we are constrained to hold that his language might well have been construed to have no meaning other than that the fourteen-year-old prosecutrix was to be sent up to the boarding-cars for the purpose, and upon the bargain with Duncan and Igleheart, that one, or both of them, were to have sexual intercourse with her. It may well be that neither the principals in this crime, nor the defendant, their accomplice, had in mind the use or necessity for force in accomplishing their evident designs. Certain side-lights in the case point to the conclusion that they did not have in contemplation the necessity for the use of force; but since prosecutrix was at the time under the age of consent, force or the lack of it cuts no figure in the case. We are fully convinced that the

language used by defendant was so far susceptible of the construction which the triers of fact put on it, to-wit, that it was an invitation to, and a bargain with, Duncan and Igleheart to have sexual intercourse with his fourteen-year-old daughter, and an agreement to furnish these men with an opportunity to consummate such bargain, that we will on this point leave the case where the triers of fact left it. We hold that the evidence was substantial, since the language and the acts of defendant were obviously susceptible of the construction which the jury placed on them (Linderman v. Carmin, 255 Mo. 62; Knorpp v. Wagner, 195 Mo. l. c. 662), and we uniformly hold that when there is in a case substantial proof of the crime charged, or of any required element to make out such crime, the question becomes one of fact for the jury, and not one of law for us. [State v. Taylor, 261 Mo. 210; State v. Concelia, 250 Mo. 411.]

Other matters are urged in the motion for a new trial, but since all such contentions are either not borne out by the record, or being so shown therein have yet not been properly preserved for our review, we are not permitted to consider them.

Let the case be affirmed. All concur.