### STATE v. BRIGHT.

No. 43850.

Supreme Court of Missouri.

Division No. 1.

June 14, 1954.

Motion for Rehearing or to Transfer to Court en Banc Denied July 12, 1954.

Morris A. Shenker, Bernard J. Mellman, St. Louis, for appellant.

John M. Dalton, Atty. Gen., David Donnelly, Special Asst. Atty. Gen., for respondent.

HOLLINGSWORTH, Judge.

Upon trial by jury in the Circuit Court of the City of St. Louis, defendant was found guilty of the offense of knowingly receiving stolen property of the value of more than thirty dollars and his punishment was fixed at imprisonment in the State Penitentiary for a term of two years. He has appealed from the judgment and sentence imposed in conformity with the verdict, alleging: (1) that the indictment is fatally defective; (2) error in overruling his pretrial motion to dismiss and separate plea in abatement; (3) error in refusal of his motion "in the nature of a demurrer to the evidence"; (4) failure to in-

struct the jury upon the lessor offense of receiving stolen property of a value less than thirty dollars; (5) error in Instruction No. 1, submitting the case; (6) errors in the admission of evidence; and (7) error in refusing to reprimand counsel for the State and to declare a mistrial because of improper conduct during the trial.

All of the evidence adduced at the trial was presented by the State. The contention made by defendant that substantial portions of it were erroneously admitted makes it necessary to separately summarize the testimony of several of the witnesses.

Adolph Katz testified: He is and during the times herein mentioned has been general superintendent of Forest City Manufacturing Company, a corporation domiciled in the City of St. Louis and engaged in the manufacture of ladies dresses. It also sells dresses made by its subsidiaries, Doris Dodson Garment Company, and several others, each of which places its labeled name upon the garments manufactured by it. All of these subsidiaries are incorporated but are owned by Forest City Manufacturing Company, as the parent corporation. The products of these companies are generally sent to the buyers by parcel post. As general superintendent, witness has access to all of the books, records and accounts of Forest City Manufacturing Company and general supervision of the receiving, packaging and inspection in the process of manufacture and distribution of the products marketed by it, but he does not personally keep the books and records and does not actually package or send out the goods. The records kept by his employer are standard business records and are made up from day to day. They contain a complete record of the company's business operations. Over defendant's objection, witness was permitted to testify that these records showed that during 1951 and until March, 1952, large quantities of the dresses produced by his employer and its subsidiaries, estimated at about $25,000 in value, were "going astray".

The witness further testified: Dresses packaged and stamped for mailing to customers were delivered to Supreme Express Transfer at Forest City's place of business for transfer to the post office. Bill Lakes, an employee of Supreme Transfer, was the driver who generally "picked them up." Witness identified several dresses shown him, State's Exhibits 1, 3, 4 and 5, as typical of the products "gone astray", but could not positively identify them as products of either Forest City or any of its subsidiaries for the reason that the labels had been removed. He did, however, identify one dress, State's Exhibit 2, as a product of Forest City Manufacturing Company and testified that its value was $8.75. Witness heard defendant questioned at police headquarters concerning the matter of these dresses and heard him state that he did receive packages of dresses from Lakes and that he had disposed of some of these dresses.

Bill Lakes testified: He is confined in the penitentiary, serving a term of imprisonment upon a plea of guilty to grand larceny for the theft of the dresses here in question. He worked as a driver for Supreme Express Transfer in 1951 and 1952, making "pick-ups" from Forest City Manufacturing Company and Doris Dodson and delivering them to the post office. He met defendant in 1951 and thereafter saw him frequently at the 29 Bar on Market Street. In the early part of 1952 (and 1951?), witness began to take boxes of dresses from his delivery truck at weekly or biweekly intervals. He took fifty or more boxes of dresses from the truck and sold them to defendant and other persons. He would leave the boxes on the truck instead of delivering them to the post office. He delivered five or six packages to defendant, for each of which defendant paid him $10 or $12, depending upon the size of the box. Defendant knew that he, Lakes, was stealing these packages and selling them. While talking and drinking together, defendant said to him, "You can let me have some of those things too. We can get together and make a little money." Witness replied, "Okay, I would let him have some of them." He told defendant the dresses were "hot".

William Heffern, a police officer, testified: He questioned defendant following his arrest. Defendant stated that on or about March 1, 1952, March 6, 1952, and March 15, 1952, he purchased three cardboard boxes containing dresses from a colored man by the name of William Lakes; that he paid $10 for the box received on March 1st; it contained three ladies dresses; that on March 6th, he paid $10 for another box containing about eight ladies dresses; that on March 15th, there were twelve dresses in the box received from Lakes for which he paid $34 to Lakes. Defendant further stated that he sold these dresses to various colored people; that about March 15th, he sold three dresses to a colored lady named Lula Jones for $3.00 or $3.50 each; that he also gave Lula Jones two dresses; that defendant further said that Lakes had sold dresses to other people in the 29 Bar. Defendant further stated that he asked Lakes if he, defendant, could buy some dresses from him and Lakes replied "Yes", he could; that he, defendant, had then asked Lakes where he got the dresses and Lakes stated that he stole them from the truck he was driving; that he would take dresses from Forest City Manufacturing Company to the post office and that when he got to the post office he would unload most of the packages, but would leave "a couple" on the truck, later take them over to the 29 Bar and leave them there.

Evry Jackson testified: She knew defendant. In 1952 defendant asked witness if she wanted to buy some dresses and she replied that she did. Thereafter, she bought three dresses from him for her daughter, Lula Jones, paying him $3.00 or $3.50 for each. Defendant also gave her two dresses.

Lula Jones, daughter of Evry Jackson, corroborated the testimony of her mother and further testified the dresses were thereafter delivered to the police; and that State's Exhibit 1 was an exact pattern of one of the dresses she bought. Edward Rung, a police officer, testified that he recovered five ladies dresses from Evry Jackson and her daughter, Lula Jones. They were the dresses marked State's Exhibits 1 to 5. Several other witnesses, including police officers and postal inspectors, testified, but their testimony is merely corroborative of that hereinabove set forth and need not be narrated. Other testimony will be referred to as it becomes pertinent.

In his motion for new trial defendant for the first time attacked the indictment, contending that it did not allege a valid charge under the laws of the State of Missouri and that a judgment of conviction could not be legally bottomed thereon. His complaint before this court is that it does not allege "with sufficient particularity the date when the alleged offense occurred" and that it is "completely vague and indefinite as to what property the defendant is charged with having received." We need not here set forth the indictment. It is substantially in the form approved in this court in State v. Washington, Mo.Sup., 24 S.W.2d 1010, 1011, and State v. Derrington, Mo.Sup., 137 S.W.2d 468, 469–470. The date of the receipt by defendant of the goods allegedly theretofore stolen from Forest City Manufacturing Company is alleged in the indictment to be "between the 1st day of February, 1952, and the 1st day of April, one thousand nine hundred and fifty-two." The goods alleged to have been so received are described as "eight cartons containing ladies wearing apparel of the value of one hundred dollars each, all of the total combined value of eight hundred dollars; of the goods, chattels and personal property of Forest City Manufacturing Company, a corporation", etc.

■ Defendant wholly fails to point out how or in what manner he was or could have been prejudiced or misled by the date alleged in the indictment or how or in what manner he was or could have been misled or prejudiced by any lack of definiteness in the description of the property allegedly received by him. The trial began on April 22, 1953, at which time Supreme Court Rule 24.03, 42 V.A.M.S., had been in effect since January 1, 1953. It provides: "When an indictment or information alleges the essential facts constituting the offense charged but fails to inform the defendant of

the particulars of the offense sufficiently, to prepare his defense, the court may direct or permit the filing of a bill of particulars. A motion for a bill of particulars may be made only within ten days after arraignment and before the trial commences or at such other time before or after arraignment as may be prescribed by rule or order of the court. * * *" Defendant could have availed himself of the provisions of this Rule, and presumably would have done so had it been necessary to the preparation of his defense. There was no discrepancy between the dates and description of the property alleged in the indictment and shown by the evidence. It sufficiently alleged the date of the taking of the property, it advised defendant of the property he was charged with feloniously receiving, and the judgment rendered thereon is a bar to any subsequent prosecution for the same offense. The contention is without merit.

Defendant entered a plea of not guilty on October 6, 1952. Thereafter, on April 13, 1953, without leave of court, he filed a motion to dismiss and a separate verified plea in abatement, both of which alleged that prior to the return of the indictment defendant had been subpoenaed to appear and did appear as a witness before the grand jury investigating the offense with which he was subsequently charged. The motion to dismiss alleged that he did not waive immunity. The plea in abatement alleged that defendant "was sworn as a witness and was compelled to testify and did testify in the matter of the said investigation, without being informed that his own conduct was under investigation." Defendant offered no proof in support of either the motion to dismiss or the plea in abatement and both were overruled. He contends, however, that the verified plea in abatement, in the absence of a written traverse thereof by the State, constituted proof of the allegations therein set forth, citing State v. Naughton, 221 Mo. 398, 407, 120 S.W. 53, 58, and State v. Gardiner, 88 Minn. 130, 92 N.W. 529.

We have examined both of those cases. Neither is in point. The verified motion in each of those cases set forth in detail the testimony allegedly given by the defendant before the grand jury, which on its face showed that the defendant had been compelled to give explicit and detailed testimony concerning the offense for which he was thereafter indicted. In the Naughton case, supra, evidence was heard and a transcript of the defendant's testimony before the grand jury was placed in evidence. It definitely established the truth of the allegations of his motion. In the Gardiner case, supra, the defendant, in connection with his motion, moved the trial court to direct the production of the grand jury's minutes, but the trial court refused to do so and denied the motion. Upon appeal, the State asserted that defendant's failure to prove the facts alleged in its motion justified the trial court in denying the motion. The appellate court noted that "the only conclusion that can be drawn from the record is that the motion was denied because the facts alleged in the affidavit were, as a matter of law, insufficient to call upon the court to enter upon an investigation of the merits of the charge that the defendant was subpoenaed before the grand jury, and required to give evidence against himself." Consequently, the appellate court held that the failure to introduce proof of the allegations was immaterial.

In the instant case, the motions alleged merely the bald conclusion that defendant was compelled to testify before the grand jury in regard to the matter for which he was thereafter indicted and that he had not waived his constitutional immunity. No fact was alleged and no offer of proof was made from which the trial court could determine whether as a matter of law defendant's rights had been violated. The mere verification of the conclusions pleaded in these motions does not rise to the dignity of competent evidence. It is axiomatic that these motions, relating to matters *dehors* the record, and unsupported by competent evidence, either by affidavit or oral testimony, did not prove themselves. State v. Bowman, Mo.Sup., 12 S.W.2d 51, 52, and cases therein cited; State v. Langford, 293 Mo. 436, 240 S.W. 167, 168;

Section 545.830, RSMo 1949, V.A.M.S. The contention is ruled against defendant.

Defendant's next assignment is that the evidence showed that the dresses received by defendant were not stolen but were embezzled and that his conviction of the offense of receiving stolen property cannot stand. If defendant is correct in saying that Lakes embezzled the dresses, then his contention is supported by substantial authority. State v. Fink, 186 Mo. 50, 84 S.W. 921; State v. Gennusa, 258 Mo. 273, 167 S.W. 439; State v. George, 263 Mo. 686, 173 S.W. 1077; State v. Coster, 170 Mo.App. 539, 156 S.W. 773, 157 S.W. 85. These cases unequivocally hold that where the evidence shows the first taker was guilty of embezzlement a conviction of receiving stolen goods must be reversed. If, however, the original taker, Lakes, had the felonious intent and purpose of converting the dresses to his own use when he received them from Forest City Manufacturing Company, then his act in thereafter converting them to his own use was larceny. This distinction is expressly noted in one of the above cited cases. In State v. Coster, 170 Mo.App. 539, 541, 157 S.W. 85, the court in discussing this matter said: "If Ashlock had come into possession of the goods for the purpose and with the felonious intent to convert them to his own use, it would have been larceny. But the evidence does not show that to be the fact. As already stated, he was and had been the owner's employe, and the testimony was that he was in charge and direct control of the goods. He had been and was in lawful charge of them when he conceived the design of converting them to his own use. He thus became guilty of embezzlement." To the same effect are the cases of State v. Casey, 207 Mo. 1, 14, 105 S.W. 645, 648, and State v. La France, Mo.Sup., 165 S.W.2d 624, 146 A.L.R. 529, and cases therein cited.

In this case, Lakes testified that in the early part of 1952, and prior to dealing with defendant, he had begun the practice of withholding packages of dresses from his delivery truck and selling them to confederates. He further testified that he made the agreement with defendant to take some of them for sale to defendant before he actually took them. Under such circumstances, it is clear that prior to receipt of packages for delivery to the post office Lakes not only had begun the practice of but had formed the intent and purpose of taking such of them as suited his purpose. In other words, he had the intent and purpose of stealing *any* package that thereafter fitted into his plans. Those here shown to have been taken by him obviously fitted into his preconceived plans. In the recent case of State v. Russell, Mo.Sup., 265 S.W.2d 379, 381, we said: "As observed in State v. Gould, 329 Mo. 828, 46 S.W.2d 886, 889, and reasserted in State v. Cochran, 336 Mo. 649, 80 S.W.2d 182, 184(3), larceny, embezzlement and obtaining money under false pretenses stand on an equal footing, the distinction resting in the time of forming the criminal intent; and in instances where the criminal acts of a defendant will support a conviction on either of two theories, the court is not required 'to draw fine hair-splitting distinctions and ascertain just at what moment the criminal intent was formed.' " We are convinced that the evidence supports the finding of the jury that the dresses received by defendant were stolen.

Defendant also asserts there was no evidence that Forest City Manufacturing Company was a corporation. Its general superintendent expressly testified that it and its subsidiaries were corporations. That was sufficient. State v. Ridinger, Mo.Sup., 266 S.W.2d 626, 631.

Defendant contends that the trial court erred in failing to instruct the jury upon the punishment to be assessed against defendant if it found the dresses received by him were of less value than $30. Inasmuch as the punishment for receiving stolen property is assessed by statute, Section 560.270, RSMo 1949, V.A.M.S., in the same manner and to the same extent as larceny, such an instruction was proper and the duty of the court to give it was mandatory (defendant did not request it) if there is any conflict whatever in the evidence or

any issue as to its value. State v. Enochs, 339 Mo. 953, 98 S.W.2d 685, 688. If, however, the property received by defendant was indisputedly of greater value than $30, then there was no occasion for an instruction on receiving stolen property of less value than $30. State v. Smith, 357 Mo. 467, 209 S.W.2d 138, 141.

■ Lakes testified he sold five or six packages of the stolen dresses to defendant for $10 or $12 per package. Defendant admitted to police officer Heffern that he purchased three packages from Lakes for which he paid Lakes the total sum of $54. The three packages that defendant admitted receiving contained, according to his admission, a total of twenty-one dresses. Defendant sold three of them for $3.00 or $3.50 each. Forest City's superintendent identified one of them and testified it was priced to sell for $8.75. There was no evidence to the contrary of that set forth. Thus, while the evidence does not definitely establish the total value of the dresses received by defendant from Lakes, yet it does indisputably establish, we think, that they exceeded $30 in value. The court did not err in failing to instruct the jury upon a finding of a lesser value.

Defendant next complains of Instruction No. 1, contending that it assumes that the dresses were stolen. In so contending, the defendant is mistaken. The charging portion of the instruction expressly directs that: "If, upon consideration of all the testimony in the case, in the light of the Court's instructions, you find and believe from the evidence, beyond a reasonable doubt, that at the City of St. Louis and State of Missouri, between the 1st day of February, 1952 and the 1st day of April, 1952, certain articles of ladies wearing apparel, of the value of more than thirty dollars, was stolen, taken and carried away from Forest City Manufacturing Company by Bill Lakes, with the intent on the part of said Bill Lakes to convert the same to his own use and to permanently deprive the owner of the same without its consent, and that the property so stolen, taken and carried away was of the value of thirty dollars or more, and was the property of Forest City

Manufacturing Company, a corporation, and that after said property had been by the said Bill Lakes so stolen, taken and carried away, the defendant at the City of St. Louis and State of Missouri, between the 1st day of February, 1952 and the 1st day of April, 1952, unlawfully and fraudulently and feloniously did buy or receive the said property, or any part thereof, of the value of thirty dollars or more, into his possession, and that at the time he did so he knew it to be stolen property, you will find the defendant guilty of receiving stolen property as charged in the indictment", etc.

Thereafter, in defining the word "knowing", as used in the foregoing paragraph, the instruction used such phrases as these: "By the term 'knowing' that the property was stolen is meant personal knowledge on the part of the defendant that the property mentioned in the evidence had been stolen * * *", and "In determining whether or not the defendant believed and was satisfied that the property in question was stolen * * *."

■ The effect of defendant's contention is that the phrase "and that the property so stolen, taken and carried away", as set forth in the above quoted charging portion of the instruction, and the above quoted phrases set forth in subsequent paragraphs defining the meaning of the word "knowing", assume the theft of the dresses by Lakes. Read as a whole and fairly construed, it makes no such assumption. It could well have tended to confuse the jury rather than clarify the meaning of the instruction if the court had inserted in each of these phrases the additional phrase "if you find the property was stolen". The court had theretofore definitely predicated any conviction of defendant upon the jury's finding beyond a reasonable doubt that Lakes had stolen the property defendant was charged with knowingly receiving. The instruction is substantially in the form heretofore approved by this court and is not erroneous. State v. Sakowski, 191 Mo. 635, 642, 90 S.W. 435, 436; State v. Lippman, Mo.Sup., 222 S.W. 436, 440; State v. Reinke, Mo.Sup., 147 S.W.2d 464, 465.

■ Defendant's next contention is that the court erred in admitting prejudicially incompetent hearsay testimony of several witnesses. One instance of which defendant complains is the testimony of Forest City's general superintendent, Adolph Katz, that Forest City's records showed that in 1951 and 1952 large amounts of its products, estimated at $25,000, were "going astray". Assuming, without deciding, that Katz should not have been permitted to testify what Forest City's records showed as to goods "going astray", the testimony was wholly immaterial and inconsequential. The testimony of Lakes, who at the time of the trial was serving a term of imprisonment for the theft of 50 to 100 packages of dresses from Forest City, definitely establishes the fact that Forest City's products were "going astray". Any error in the admission of Katz's testimony could not have been prejudicial to defendant. It was. cured by the uncontradicted testimony of Lakes. State v. Gulley, 272 Mo. 484, 199 S.W. 124, 125. See also the collected cases in Vol. 9-A, Mo.Dig., Criminal Law ■ ■ p. 536.

■ Defendant also says the court erred in permitting several postal inspectors to testify that prior to beginning an investigation of the matter here involved, Katz told them in their official capacities "that goods were being misplaced or misappropriated", and that "we received reports that stuff was missing". This testimony obviously was not introduced as evidence of the fact that goods were stolen from Forest City, but rather as the background of the subsequent activities of the witnesses and the facts which they afterwards assembled and detailed in evidence. It did not violate the hearsay rule. 22 C.J.S., Criminal Law, § 718, p. 1229; State v. Golden, 353 Mo. 585, 183 S.W.2d 109, 116.

■ Another instance of which defendant complains arose during the testimony of Carl McKinnis, a postal inspector. McKinnis had testified that he was present during the questioning of defendant following defendant's arrest. The following then occurred: "Q. You may continue with what the statements of Mr. Luther Bright (defendant) were to you. A. Mr. Luther Bright stated that he had received stolen dresses from William Bill Lakes. It was also brought out in this questioning that he knew the dresses were stolen." Defendant objected and moved for a mistrial, which was denied. Technically, the last sentence of the answer of the witness could be construed as a conclusion, and yet it is readily apparent that the witness meant that defendant stated in the presence of the witness that he knew the dresses were stolen. The uncontradicted testimony of police officers and others to the same effect tends to show defendant did make such an admission. The contention should be and is overruled.

■ In connection with this same witness' testimony, defendant contends that the assistant circuit attorney was guilty of such misconduct as to require a mistrial. The witness had begun to answer a question by the use of these words: "Bright was asked about the dresses that had been stolen and he admitted that he—." An objection was interposed and sustained to the use of the word "admitted". The assistant circuit attorney then remarked: "Your Honor, I believe what he did was, he said, 'I admit that I took the dresses.'" Defendant moved for a mistrial which was denied, the court remarking that he did not "know that the jury even heard it." Whether the jury heard or did not hear it, the matter was of little consequence. The trial court did not deem it prejudicial, and we agree with this view.

■ Another instance of the State's attorney's conduct of which complaint is made occurred during the direct examination of witness Evry Jackson, when the State's attorney said to witness, "I direct your attention to the time that he (defendant) brought some dresses to your house." The record shows that the witness was confused as to which of two visits she was being interrogated, and the statement was made to clear up the confusion in the witness' mind. We see no serious impropriety in the statement.

Another instance of which complaint is made occurred when the State's attorney was interrogating a police officer. He asked the officer: "Did you assist in recovering merchandise which Luther Bright had stole—had sold—." At this point, defendant objected and asked a mistrial. The court sustained the objection and denied the motion. Another instance occurred when the State's attorney asked a witness: "Were you present when dresses that were stolen from Forest City Manufacturing Company—" At this point defendant objected and asked for a mistrial. The objection was sustained and the motion overruled. The improprieties on the part of the State's attorney in these two instances are not to be commended, but the trial court who heard the trial deemed them not to be prejudicial, and we are convinced he did not abuse his discretion in refusing the motions for mistrial.

The judgment should be and is affirmed.

All concur.