STATE of Missouri, Respondent,

v.

Charles CACIOPPO, Appellant.

No. 23840.

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1963.

**480**

Simon & Pierce, Kenneth K. Simon, Lewis E. Pierce, Kansas City, for appellant.

Lawrence F. Gepford, Pros. Atty., Jackson County, Edward J. Houlehan, Asst. Pros. Atty., Kansas City, for respondent.

BROADDUS, Presiding Judge.

The appellant was indicted by the Jackson County Grand Jury and charged with, on or about October 17, 1961, receiving stolen property described as cologne, deodorant, cold tablets, aspirin, shaving lotion, soap and combs, all the aggregate value of $28.85, knowing said property to have been stolen and with intent to defraud the Katz Drug Company, a corporation. The appellant entered a plea of not guilty and was tried by a jury which returned a verdict as follows: "We, the jury, find the defendant Charles Cacioppo guilty of receiving stolen property of under the value of $50.00 and assess his punishment by 6 months in jail and $1,000.00 fine."

The evidence adduced on behalf of the State was that on October 18, 1961, Mr. Bao, manager of the Katz Drug Store located at 3124 Raytown Road, noticed a loss of merchandise from the cosmetic department of his store. Mr. Bao, reading from a list prepared by him and his employees, itemized by brand and amount the items which he was unable to account for. The items had a total retail value of $56.

Arthur Williams testified on behalf of the State that he and a man identified as Ernest Jordan, together with Ida Mae Thornton and Freda Oliver were, on the night of October 17, 1961, out "boosting" or stealing from various stores including the Katz store located at Raytown Road, from which they took a quantity of toilet articles described as deodorant, shaving lotion and combs. Williams testified that he took his portion of the articles to Atlas Sundries at 19th Street and Vine, Kansas City, Missouri, where he sold them to the defendant for $25.

Ida Mae Thornton testified that she was with Arthur Williams, Ernest Jordan and Freda Oliver on the night of October 17,

1961, when they went to several Katz stores for the purpose of shoplifting, including the one at 31st and Raytown Road, where they stole a quantity of toilet articles which she identified as toothpaste, mints, lotion and combs. She stated that they drove to the address at 19th & Vine at about eleven p. m. where the two men entered the store and that later a man whom she identified as the appellant returned to the car and reportedly said, "be careful coming in the front way with this stuff." She testified that Williams and Jordan then carried the merchandise into the store, entering the front door. She stated that Ernest Jordan returned with his merchandise and that he was angry because he could not sell his merchandise; that Williams returned after selling his merchandise and divided $25 between himself and Freda Oliver.

Mr. Bill Witcig, a detective on the Kansas City, Missouri Police Department assigned to the Burglary unit, testified that on the 19th day of October, 1961, he and Detective Colosterman made a search of the Atlas Drug Store at 19th & Vine; that they were looking for merchandise bearing Katz and Safeway labels and, as a result of the search, they "brought in about 20 items all together, there were several with Katz labels and that sort of thing." He described the items as toilet articles, shaving lather and cosmetics. Mr. Witcig was not asked to and did not identify any articles as being those recovered from the store and the articles were not identified as being stolen from the Katz Drug Store. At the time of the search the appellant was not on the premises.

The appellant's evidence established that the manager of Atlas Drug Store where appellant was employed, was one Samuel Joseph LaGrotte, who testified that on occasion he purchased from chain stores certain merchandise which he found them to be selling below cost, and he further testified that he did on occasion and had prior to October 17, 1961, purchased merchandise from Katz Stores which he was able to buy cheaper than he could buy it from

his own suppliers. He stated that the officers did take from his store, in his presence, items which bore Katz labels which he stated to the officers at the time of the seizure he had himself purchased and paid for.

Beverly Sherrow testified that she was a clerk in the Atlas Drug Store, and was on duty on October 17, 1961, when two colored men came into the store carrying a box, or sacks of merchandise and had a discussion with Mr. Cacioppo. She stated after a short conversation, Mr. Cacioppo started yelling and cursing and told them to get out of the store; that he didn't want anything to do with them. She further testified that the appellant did not leave the store during the evening.

■ Appellant's first contention is that the court erred in overruling his motion for judgment of acquittal at the close of all the evidence. This court cannot weigh the evidence in a criminal case. We can only determine if there is substantial evidence to support the verdict. In making this determination we must view the evidence in the light most favorable to the verdict. We must accept the State's evidence as true and draw therefrom the most favorable inferences to the State and disregard defendant's contradictory evidence. State v. Morris, 307 S.W.2d 667, 668 (Mo.Sup.)

■ It is often difficult to make direct and positive proof of the accused's knowledge that the goods were stolen, and this element may be inferred from facts and circumstances in evidence. State v. Hicklin, 358 Mo. 1016, 218 S.W.2d 564, 565. The more frequent factors from which guilty knowledge has been inferred are inadequacy of price, irresponsibility of the vendor and secrecy of the transaction. State v. Ham, 104 S.W.2d 232, 233, (Mo. Sup.) According to the State's evidence all of those factors were present in the instant case. Thus appellant's motion was properly overruled.

Appellant next attacks the verdict. We have set it out in the opening paragraph of

**482**

this opinion. As is to be noted it does not contain the usual words "as charged in the indictment". It omits two very important elements of the crime of receiving stolen property, i. e., knowledge on the part of appellant that it was stolen, and, since the 1955 amendment to Sect. 560.270, "with intent to defraud" the owner thereof. State v. Harris, 313 S.W.2d 664 (Mo.Sup.); State v. Bryant, Mo., 319 S.W.2d 635.

In the case of State v. Saussele, Mo., 265 S.W.2d 290, our Supreme Court, En Banc, reviewed many Missouri decisions wherein certain verdicts had been denominated as special verdicts and concluded that those cases actually seem to have been decided on the basis of definiteness, certainty and responsiveness of the verdict. The court then said:

"Of course, a verdict that *does not refer to the indictment* in its description of the offense, of which it finds the defendant guilty, must be responsive to the charge made by the indictment and certain as to the offense intended; *or, as the cases say, a verdict must contain either in itself or by reference to the indictment all of the essentials of the crime.* See State v. DeWitt, supra, 186 Mo., loc. cit. 69, 84 S.W. 956." (Emphasis ours.)

In the DeWitt case which the court cites appears this quotation: "A good verdict must contain either in itself or by reference to the indictment all the essentials of the crime. *If silent on some element of the crime, the verdict will not sustain a judgment.*"

In the case of State v. Pollock, 105 Mo.App. 273, 79 S.W. 980, the court held:

"A verdict which found, without referring to the indictment, a defendant guilty of receiving stolen property, and failed to find that he knew the property was stolen, was not responsive to the indictment and a judgment rendered thereon should have been arrested."

This was the law then. It is the law today. Had the jury in the instant case referred to the indictment the verdict would have been good. Not having done that, the failure to find the essential elements of the crime, to-wit: knowledge on the part of appellant that the goods were stolen and with intent to defraud the owner thereof, renders the verdict bad.

Appellant's next point is that the State failed to prove that the Katz Drug Company was a corporation. The following appears in the testimony of Mr. Bao, the store manager:

"Q. Now, then, is the Katz Drug Company a corporation? A. It is a corporation."

In the case of State v. Bright, 269 S.W.2d 615, 621, (Mo.Sup.) the court said: "Defendant also asserts that there was no evidence that Forest City Manufacturing Company was a corporation. Its general superintendent expressly testified that it and its subsidiaries were corporations. That was sufficient."

Appellant's last contention we need not discuss. It relates to a matter which will not likely occur again on retrial.

The judgment is reversed and the cause remanded.

All concur.