THE STATE v. RICHARD MORRO, Appellant.

Division Two, February 26, 1926.

1. CORPUS DELICTI: Embezzlement: Confession: Independent Proof. The rule that the confession of defendant charged with a crime will not support a verdict unless there is independent proof that the crime has been committed, applicable in murder or arson cases, cannot be unequivocally applied in the trial of the cashier of a bank

State v. Morro.

charged with embezzlement under the statute (Sec. 3327, R. S. 1919) making it a crime for any officer of an incorporated company to convert to his own use, without the assent of his employer, any money which shall have come into his possession or into his care by virtue of his employment. Proof that defendant received $5,000 for the bank, accounted for only $100 of it, and deprived the bank of the remaining $4900, all done in his official capacity as cashier, all the transactions being in his own handwriting, is proof that the crime denounced by the statute was committed, and is sufficient evidence to make admissible his confession that he committed it.

2. ———: ———: ———: ———: **True Rule: Corroboration.** Full proof of the *corpus delicti*, independent of the confession of the defendant, is not required. If there is evidence of corroborating circumstances which tend to prove the crime and correspond to the circumstances stated in the confession, both the circumstances and the confession may be considered in determining whether the *corpus delicti* has been sufficiently proved.

3. ———: ———: **Conversion.** Money of a bank loaned by its cashier on his own account is a conversion to his own use; and proof that he got $5,000 of the bank's money and in some way disposed of $4900 of it and thereby deprived the bank of that amount is *prima-facie* proof of conversion and sufficient to establish the *corpus delicti*, independently of his confession that some of the money he loaned to trusted friends on his own account and some of it he used in high living.

4. **EMBEZZLEMENT: Evidence: Correct Method of Entry.** In the trial of the cashier of a bank charged with embezzlement, it is competent for the official examiner of the clearing house, whose official duty it was to understand the bank's method of bookkeeping, to testify, as an expert in bookkeeping for banks, what particular entry should have been made in the bank's books to show the truth concerning the receipt by the cashier of a check and the issuance in lieu therefor of a time-deposit certificate.

5. ———: ———: **Loose Sheet from Bank Record.** Exhibits of pages from the loose-leaf certificate-of-deposit register and daily cash book, containing entries made by the defendant and showing a supposed deposit to a fictitious person, identified, as books of the bank, by the person who had succeeded defendant as cashier and had been cashier ever since the shortage was discovered, are competent evidence, although the witness has no personal knowledge of the entries on the books.

6. ———: ———: **Confession: Repetition by Witness.** Statements made by a witness in reporting to the board of directors defendant's

State v. Morro.

confession that he had embezzled the bank's moneys, made in the presence of defendant who was not under arrest or duress or constraint, are competent evidence, whether or not defendant at the time confirmed them or said nothing. And it was proper for the witness to testify just what he said to the board of directors, whether he stated conclusions or made general accusations, or repeated the exact words used by defendant in making his confession to him, if his statements, made in defendant's presence, were understood by defendant.

7. ——: ——: ——: Different Delineations of Statements: Matter for Jury. The manager of the clearance house detailed a statement he made to the board of directors of the bank as the report of a confession of the defendant cashier that he had embezzled the bank's moneys. Another witness, who was present when the statement was made, in enumerating the items of the manager's statement, mentioned some items which the manager had not mentioned in his testimony. *Held*, these facts simply showed that the two witnesses recollected the statement differently as to some particulars, and if their testimony was so contradictory as to reflect upon the credibility of either it was for the jury to say which, if either, told the truth.

8. ——: General Instruction: Different Acts: No Request for Election. An instruction telling the jury that if they find that the defendant was cashier of the bank and during his employment received into his possession and under his control the sum of $4900, the property of said bank, and unlawfully, fraudulently and intentionally embezzled and converted said money or any portion thereof in excess of $30 to his own use, they should find him guilty, is not reversible error, although the evidence shows that there were three transactions at different times, in each of which the evidence tended to show that defendant embezzled $4900, and the instruction does not direct the jury's attention to the particular $4900 defendant was charged with having embezzled. Evidence of the other embezzlements was competent as tending to show intent, and if the defendant desired to have the jury's attention confined to the particular embezzlement charged in the information, he should have, by motion to elect or a proper instruction, requested the court to limit their consideration to that particular offense.

Criminal Law, 16 C. J., Section 1233, p. 624, n. 19; Section 1262, p. 634, n. 3, 6; Section 1514, p. 735, n. 45; p. 736, n. 46, 48; p. 737, n. 51, 53; Section 1532, p. 748, n. 50; p. 749, n. 61; Section 1580, p. 772, n. 31; Section 2291, p. 930, n. 93; Section 2490, p. 1047, n. 65. Embezzlement, 20 C. J., Section 16, p. 427, n. 24; Section 80, p. 484, n. 47; Section 82, p. 487, n. 62.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Landon*, Judge.

State v. Morro.

AFFIRMED.

*Clarence Wofford* and *Bert S. Kimbrell* for appellant.

(1)   The court erred in overruling the demurrer of the defendant, offered at the conclusion of all of the evidence in the case, for these reasons: (a)   There was no competent substantial proof of the *corpus delicti.* The State could not establish its case by the extra-judicial admissions and confessions of the defendant alone and without proof *aliunde* that the crime charged had been committed.  Sec. 3327, R. S. 1919; State v. Britt, 278 Mo. 510; State v. Fowler, 265 Mo. 190; State v. Mullinix, 301 Mo. 385; State v. Bowman, 294 Mo. 245; State v. Scott, 39 Mo. 429; Robinson v. State, 12 Mo. 592; Martin v. United States, 264 Fed. 950; Goff v. United States, 257 Fed. 294; Naftzger v. United States, 200 Fed. 498; Secor v. State, 118 Wis. 621; People v. Rowland, 12 Cal. App. 6; Choate v. State, 160 Pac. 34, L. R. A. 1917A, 1287. (b)  The proof for the State did not show that the money, alleged in the indictment to have been embezzled, was embezzled, rather than loaned.  (c)   The proof for the State was too vague, general, uncertain and indefinite to uphold the conviction. (2)   The court erred in permitting the witness Roddy to testify, over the objection and exception of the defendant, that if certificate of deposit number twenty had been properly recorded on the books of the bank it would have been payable to the International Life Insurance Company, that the date of issue would have been 12-26-22, that it would have been payable within six months, that it would have been listed as $5000 and would not have been entered as $100, the witness having no personal knowledge of the matter.  The court erred in receiving similar testimony from the same witness as to certificate of deposit number 107, and as to State's exhibit numbered 1.   (3) The court erred in admitting in evidence Exhibits 1 and 6, for the reason that they were not identified.   (4)   The

court erred in permitting the witness Moore to state that the figures 31442.55, in line 10 of Exhibit 6, was a credit, the witness having no personal knowledge of the matter. (5) The court erred in permitting the witness Moore to testify that a certain entry upon exhibit numbered 7 identified the amount outstanding on unpaid certificates of deposit on Monday, December 18, 1922, the witness having no personal knowledge of the matter. (6) The court erred in permitting the witness Biggerstaff, over the objection and exception of the defendant, to testify as follows: "I told them at that meeting he was short $42,000. I told them he was $42,800 short," for the reason that such testimony was an inference and conclusion of said witness. (7) The court erred in permitting the witness Biggerstaff, over the objection and exception of the defendant, to recite and narrate, at a meeting of the board of directors of the Corn Exchange Bank and the officers of the Kansas City Clearing House Association, on the afternoon of June 14, 1923, alleged admissions and confessions of the defendant, alleged to have been made to said Biggerstaff on the morning of June 14, 1923. (8) The court erred in permitting the witness Wayland, over the objection and exception of defendant, to recite and narrate, at a meeting of the board of directors of the Corn Exchange Bank and the officers of the Kansas City Clearing House Association, on the afternoon of June 14, 1923, what Biggerstaff said the defendant said to Biggerstaff in alleged admissions and confessions on the morning of June 14, 1923. State v. Foley, 144 Mo. 600; State v. Bowman, 278 Mo. 492. (9) The court erred in giving Instruction 2 for these reasons: (a) Under the facts of the record, the instruction was erroneous in that it did not require the jury to find that the money, which the jury might find was embezzled, was the particular money alleged in the indictment to have been embezzled. (b) The instruction directed a verdict of guilty if the jury found the embezzlement by defendant of $4900, or any part thereof, at any time within three years prior to

October 26, 1923, without requiring the jury to find that such money was embezzled on or about December 26, 1922, and in connection with the proceeds of a check for five thousand dollars used in the purchase of Certificate of Deposit Number 102. (c) The instruction authorized a verdict of guilty if the jury found the embezzlement by defendant of $4900, or any part thereof, in connection with the $4900 transaction of December 26, 1922, March 31, 1923, or May 18, 1923, or any instance of embezzlement as shown by the extra-judicial admissions or confessions of defendant, at any time within three years. State v. Meininger, 306 Mo. 693; Nigro v. United States, 7 Fed. 560.

*North T. Gentry,* Attorney-General, and *Wm. L. Vandeventer,* Assistant Attorney-General, for respondent.

(1) The *corpus delicti* of a crime may be proven by circumstantial as well as by direct evidence. State v. Schyhart, 199 S. W. 205; State v. Wheaton, 221 S. W. 26; State v. Kehoe, 220 S. W. 961; State v. Vinton, 220 Mo. 90; 1 Underhill on Crim. Ev. (3 Ed.) sec. 37. (2) Proof necessary to prove *corpus delicti* in addition to admissions. People v. Wilson, 157 Mich. 659, 17 Am. Cas. 628. (3) The independent evidence of the *corpus delicti* need not of itself be full and conclusive. State v. Bickel, 177 S. W. 310; State v. Skibiski, 245 Mo. 454; State v. Knowles, 185 Mo. 177; State v. Wooley, 215 Mo. 671. (4) In a prosecution for embezzlement by a bank cashier, evidence of shortages in the bank's assets other than those resulting from the transaction counted on is admissible as showing intent. State v. Wilcox, 179 S. W. 479; Underhill on Crim. Evidence (3 Ed.) p. 645; 16 C. J. p. 596, sec. 1159. (5) Evidence of any amount over thirty dollars is sufficient to support a conviction and evidence may show it was received at different times and in different amounts. State v. Julin, 292 Mo. 264; State v. Shour, 196 Mo. 202; State v. McCawley, 180 S. W. 869; Hanna v. Life Ins. Co., 241 Mo.

401; State v. Wissing, 187 Mo. 96; State v. Pratt, 98 Mo. 482. (6) Continuous series of conversions may be proven to make up amount. State v. Shour, 196 Mo. 202; State v. Wise, 186 Mo. 42. (7) No motion was filed to require State to elect which particular amount embezzled it would stand on, hence there was no error in submitting the issues in the instructions. State v. McCawley, 180 S. W. 869; State v. Wissing, 187 Mo. 97. (8) Instruction 2 was proper. See cases under Point 5. (9) The appellant never asked for other instructions. If he wanted them he should have made a specific request.

WHITE, J.—The Grand Jury of Jackson County, October 26, 1923, presented an indictment against the defendant, charging that December 26, 1922, while cashier of the Corn Exchange Bank, a corporation of Kansas City, he embezzled the sum of $4900, the property of that bank. February 28, 1924, the defendant was found guilty by a jury, his punishment assessed at two years' imprisonment in the penitentiary, and he appealed from that judgment.

The evidence introduced by the State tended to show that the Corn Exchange Bank began business in 1920, with the defendant as its cashier, which office he held until June 14, 1923. December 22, 1922, he received a check from the International Life Insurance Company for five thousand dollars to pay for a time certificate of deposit, which was duly issued to that company, numbered 102, for the sum of five thousand dollars, payable six months after date with interest at three per cent per annum.

December 22nd, the date on which the check was received by the defendant, the certificate-of-deposit register of the Corn Exchange Bank showed an entry of Certificate of Deposit No. 102, for $100, to J. T. Shumway. No certificate of that number to the International Insurance Company was entered on the register, and no money received on the check was found in the cash except the $100 credited to Shumway.

Another certificate of deposit, No. 107, was issued March 31, 1923, to the International Life Insurance Company for $5,000, deposited by that company, but No. 107 was registered on the book to A. G. Barter for $100, as of March 15, instead of March 31st. Thus, in each of these transactions there was a shortage of $4900. That is, the bank issued certificates of deposit for $10,000, and only $200 was credited in the register, or found in the cash to account for it.

A third certificate of deposit for $5,000, No. 109, was issued to the International Life Insurance Company, April 27, 1923, and was registered to J. T. Shumway for $100.

June 5, 1923, the Clearing-House examiner of Kansas City, examining the books of the Corn Exchange Bank, discovered that the cash in the bank was long $4900. He called the defendant's attention to it, and it was found that a certificate had been issued to the International Life Insurance Company, No. 109, for $5,000, while the record showed certificate of that number issued to Shumway for $100. The total cash received for the certificate, $5,000, was in the bank. The inference is that the defendant had not had time, or had not seen fit as yet, to extract the $4900 from the bank's cash, as he had in the other two cases. When that irregularity was shown to the defendant he corrected the entry in the certificate register, showing certificate No. 109 was $5,000, to the International Insurance Company, instead of to Shumway for $100.

Soon afterwards Mr. Biggerstaff, manager and examiner of the Kansas City Clearing House, ordered an examination of the Corn Exchange Bank, and in that examination the irregularities were discovered; the defendant broke down, said that he was short $42,000, admitted that he had issued the certificates 102 and 107, for $5,000 each, made the false entry of $100 in each case to the wrong person, and had made away with the $4900, in each case. On this evidence he was found guilty, as stated.

I. It is first claimed by appellants that a case was not made out because the *corpus delicti,* aside from the

confession of the defendant, was not established. Defend-
ant invokes the rule as stated in State v.
Corpus Young, 237 Mo. l. c. 177, that there must be
Delicti:
Embezzlement. independent proof of the *corpus delicti;* that
is, that a crime was in fact committed, be-
fore the confession of a defendant charged with the crime
will support a verdict of guilty.

In this case it is difficult to apply that general rule.
For instance, it is said that in a murder case, to prove the
*corpus delicti,* the State must show the death of the person
alleged to have been murdered, and the criminal agency of
someone causing the death. [State v. Barrington, 198 Mo.
l. c. 113; State v. Campbell, 301 Mo. l. c. 621.] If the fact
of a murder or arson or a robbery is sufficiently proved,
then a confession by the person charged with the crime
that he was the guilty party would complete the case. But
unless and until that independent proof of the *corpus
delicti* is presented, such a confession would not be ad-
missible, and if admitted would not be sufficient to estab-
lish the guilt of the defendant. The difficulty of apply-
ing that principle in a case like this is apparent. The
statute, Section 3327, under which the defendant was
convicted, makes it a crime for any agent, clerk or ser-
vant of a private person or of any partnership, except a
person under sixteen years of age, or for any officer, agent,
clerk, servant, etc., of any incorporated company, to em-
bezzle or convert to his own use, without the assent of
his master or employer, any money, etc., which shall have
come into his possession or into his care by virtue of his
employment.

It will be seen at once that under a charge for viola-
tion of that statute it is impossible to establish the *corpus
delicti* without showing the position and relation to the
employer of some person charged with the crime. And in
this case the proof that the crime was committed would
be inseparably connected with proof that the defendant,
or some other like employee of the corporation, com-
mitted it. Ruling Case Law, vol. 7, p. 773, has this to say
about *corpus delicti* in a case of this kind:

"Where, however, the crime is of such a nature that the body of the offense is intimately connected with the question of whether or not the accused is guilty, as in forgery and false pretenses, the difficulties are multiplied manifold, and it is probably due to this reason that so very few courts have attempted in unequivocal terms to define just what is meant by the phrase '*corpus delicti*' in reference to particular crimes."

Here, as stated above, the evidence, aside from the confession of the defendant, shows the following:

The certificate-of-deposit register, December 22, 1922, shows in the defendant's handwriting certificate No. 102 for $100, issued to J. T. Shumway. Defendant was at the time cashier, and had general charge of the affairs of the bank. The evidence warrants the inference that no such certificate was ever issued. It was not shown that such a person as Shumway existed. On that date the International Life Insurance Company drew a check for $5,000, payable to Corn Exchange Bank; that check was indorsed "Corn Exchange Bank" in the defendant's handwriting. It was numbered 161,350, and stated that it is for a certificate of deposit for $5,000, payable six months after date. It was directed to the American Savings Bank, Springfield, Missouri, and was duly paid.

Certificate of Deposit No. 102 was issued December 26th, to the International Life Insurance Company for $5,000, due six months after date, signed in his own handwriting, by Richard Morro, cashier of the Corn Exchange Bank. And this certificate of deposit was paid June 25, 1923, by the Corn Exchange Bank.

No money was received by the bank representing that certificate of deposit, except the $100 credited as received from Shumway, so that the Corn Exchange Bank lost $4900 by the transaction.

A letter was introduced written by Morro as cashier of the Corn Exchange Bank, dated September 26, 1922, addressed to the International Life Insurance Company, in which he stated that for the check from the Insurance

Company, No. 161,350, the time certificate of deposit No. 102 for $5,000, was issued to the International Life Insurance Company.

This proof is sufficient to show that the defendant received $5,000 for the bank, accounted for only $100 of the amount, and deprived the bank of the remaining $4900; all of which was done in his official capacity as cashier, all the transactions being in his own handwriting.

This evidence was sufficient to make the confession admissible. It proves that a crime was committed.

Besides, it is a rule that full proof of the *corpus delicti*, independent of the confession of the defendant, is not required. If there is evidence of corroborating circumstances which tends to prove the crime and corresponds with circumstances related in his confession, both the circumstances and the confession may be considered in determining whether the *corpus delicti* is sufficiently proved. If a confession is made which enables the State to discover corroborating evidence of the particular crime confessed, the corroborating evidence need not be sufficient, independent of the confession, to establish complete proof that the crime is committed. [State v. Skibiski, 245 Mo. 1. c. 463; State v. Knowles, 185 Mo. 1. c. 177; State v. Wooley, 215 Mo. 1. c. 671-2; L. R. A. 1916 B, 1. c. 848; State v. Britt, 278 Mo. 1. c. 514.]

It is claimed by appellant that there was a failure to prove the actual conversion of the money by him to his own use which was necessary in order to establish the crime of embezzlement under the statute.

In the case of State v. Meininger, 306 Mo. 1. c. 695, this court said: "Appellant was guilty of embezzlement if he knowingly and with fraudulent intent turned over the bank's money to others without authority and without security to the bank, even though the appellant himself received no benefit of any sort therefrom."

Appellant argues that under the evidence the defendant may have loaned the money. In his confession to Biggerstaff he said that he had made loans; that the short-

State v. Morro.

age was due to friends, some of whom he trusted and some of whom he helped out in a tight place; some of it was due to high living. It is not pretended that those statements indicate that he loaned any money on behalf of the bank. If he made loans they were on his own account, and it was conversion to his own use; it was one way of squandering the money.

However, that disposition of the money is learned from his confession. The point is made that there is no evidence outside the confession to show what he did with the money. It is argued that he might have made some other use of it besides converting it, and might have committed some different offense; he might, for instance, have loaned it on behalf of the bank and made false entries on the books in relation to the transaction. That is simply a wild guess, and cannot exclude a more reasonable deduction from the evidence. It was proved that he got $5,000 of the bank's money; that he accounted for only $100; that in some way he disposed of the remaining $4900, and deprived the bank of that amount. That, prima-facie, is conversion, and is sufficient to establish the *corpus delicti*. Taken with the confession it makes out a complete case.

II.  Complaint is made of the admission of certain evidence.

Francis Roddy, who examined the books of the Corn Exchange Bank, testified explaining how the proper entry should have been made correctly to show the transactions in relation to the Certificate of Deposit No. 102. Roddy was the official examiner of the Kansas City

Correct Method of Bookkeeping.

Clearing House, of which the Corn Exchange Bank was a member; it was his official duty to understand the bank's method of bookkeeping. What he testified to was that, instead of the false entry being in the book, a correct entry should have been made, and as an expert in bookkeeping for banks it was entirely proper for him to state what particular entry should have been made to show the truth.

III.   It is claimed that the court erred in admitting exhibits 1 and 6, because they were not properly identified by the witness Moore.   Exhibit 1 was the sheet from certificate-of-deposit register, showing the supposed certificate of deposit of $100 to J. T. Shum-

Loose Sheets
from Bank Book.

way.   Exhibit 6 was a page from the daily cash book.   These books were identified by Mr. Moore, who at the time of the trial was cashier of the Corn Exchange Bank and had been such cashier since the fourteenth of June, 1923, immediately after the shortages were discovered. He testified, without objection, that Exhibit No. 1 was taken from the certificate deposit book and books of the company, a sort of loose leaf book; that the entries were made in the handwriting of Morro.   It was objected only when he was asked what such certificate-of-deposit book was kept there for.   The objection was that he had no personal knowledge.   These were the books he found there when he took charge, and, as a banker acquainted with the purpose and the use of such books, he could state what they were for.   While he had no personal knowledge of the entries on those books, he could tell from their general character for what purpose they were kept.   If he had been an officer of the bank at the time the false entries were made and the embezzlement accomplished, he could probably testify only what the books showed in relation to the transaction.   Books of that character and the entries in them are too numerous for an officer of the bank to have personal knowledge or recollection of every entry made in them.   [State v. Douglas, 312 Mo. 373.]

IV.   A. G. Biggerstaff, manager and examiner of the Kansas City Clearing House, testified that on June 14th he talked with the defendant in relation to his shortage, stated in detail how the defendant admitted he was short

Report of
Confession.

$42,000, and explained the transaction in relation to the certificates of deposit to the International Insurance Company.   In the afternoon of that day there was a meeting of the officers of the

Kansas City Clearing House Association and the directors of the Corn Exchange Bank, at which the defendant was present. At that meeting Biggerstaff made a report in the presence of the defendant, in which he told those present that the defendant had told him about the items constituting his shortage of $42,000.

The witness was asked by the State's attorney to state in substance, as nearly as he could, what he said at that meeting, and what the defendant, who was present, said. Witness began his narrative, and defendant's counsel objected to the speech which the witness was making. The court directed the witness to state what he told the defendant and the board of directors, and to limit himself to what the defendant said to him at the bank. Repeatedly the witness was interrupted, and repeatedly he stated that he was telling on the witness stand only what he had told the meeting about what the defendant had said to him.

Appellant assigns error to the admission of this testimony on the ground that what the witness stated were conclusions and not facts. The witness was not testifying to what occurred, nor to what the defendant had confessed. He was testifying to what he had told the board of directors and the Clearing House officers. If he then stated conclusions and made accusations against the defendant in general terms, it was proper for him to testify to it just as he said it. If his statements tended to charge the defendant with guilt, and the defendant admitted the truth of the charge, it would not matter whether the accusation, outside of court, was couched in general terms or not, if it was understood by the defendant.

According to the testimony of James W. Kelley, who was present at the meeting, defendant said: "I have done it and I am ready to take my medicine." And according to the testimony of John T. Wayland, who was present, the defendant said: "Gentlemen, I got the money, I am ready to take my medicine, and I do not ask any mercy."

These statements were made in response to what Biggerstaff testified he had said in reporting to the committee. Biggerstaff's evidence was admissible, even if the defendant had said nothing, because he was not under arrest, nor under duress or restraint. [State v. Burke, 234 Mo. l. c. 574.]

Appellant objected to what witness John T. Wayland testified to regarding the statement of Biggerstaff at that meeting, because in enumerating the items which Biggerstaff said defendant had told about, the witness mentioned some items that Biggerstaff did not mention in his testimony. That showed simply that the two witnesses recollected that conversation differently as to some particulars. If they had been so contradictory as to reflect on the credibility of either witness it would have been a matter for the jury to say which, if either, had told the truth. That was an argument which the defendant should have addressed to the jury.

V. Appellant assigns error to the giving of Instruction 2. It told the jury, if they found that at any time within three years prior to the filing of the indictment the defendant, Richard Morro, was cashier of the Corn Exchange Bank, and during his employment received into his possession and under his control the sum of $4900, the property of the said bank, and within three years unlawfully, fraudulently and intentionally embezzled and converted said money or any portion thereof in excess of $30, to his own use, etc., they would find the defendant guilty.

It is said to be erroneous because the evidence shows there were three transactions at different times, in each of which the evidence tended to show the defendant embezzled $4900, and the instruction should have directed the jury's attention to the particular $4900, it was sought to find the defendant guilty of embezzling.

It is not contended that the evidence of the other embezzlements was not competent as tending to show the intent with which the acts complained of were committed.

It would have been entirely proper to instruct the jury that the defendant was charged with only one embezzlement, and direct their attention to the particular embezzlement upon which the State relied to convict. Was the court in error in failing so to instruct, under the circumstances? Since there was only one offense charged in the information, and since a number of crimes were proven, at the instance of the defendant the court might have compelled the State to elect upon which particular offense it would ask a verdict; to limit the consideration of the jury to that particular incident would have been proper. In the absence of a motion to elect the jury could of course find a defendant guilty of any one of the transactions mentioned. [State v. McCawley, 180 S. W. 871; State v. Wissing, 187 Mo. l. c. 107; State v. Wise, 186 Mo. 48.] In each of the cases last cited the defendant was charged with embezzlement, and the proof showed embezzlement of different sums at different times. It was held that evidence of such different embezzlements not only were properly admitted, but that the jury were at liberty to find the defendant guilty of any one of the embezzlements mentioned, provided the amount found was in excess of $30. Appellant has pointed to no case where it was held error for the court to fail to instruct, directing the jury's specific attention to the embezzlement of particular funds charged, in the absence of a motion to elect or a designation by the State of the particular offense upon which it would ask a conviction.

Appellant points to an instruction in State v. Meininger, 306 Mo. l. c. 693, where the trial court gave an instruction, not disapproved by this court, such as the defendant says ought to have been given here. The instruction there told the jury that evidence introduced to prove embezzlements other than that alleged in the indictment should be considered only for the purpose for which it was submitted, to show an intent, and they could not convict the defendant of those embezzlements. Defendant asked no such instruction here. There was no motion to

313 Mo. Sup.—8.

elect and no objection on that ground to the submission of the case on the evidence under the indictment as charged. The jury were at liberty to find the defendant guilty of any one of the embezzlements which the evidence showed he had committed. The defendant could have asked an instruction directing the jury to determine in their verdict of which embezzlement they should find the defendant guilty, if they found him guilty, or might have asked a form of verdict by which the jury could fix the particular act.

In the absence of any request on the part of the defendant we think the trial court did not err in failing to give such an instruction after the manner in which the defendant allowed the case to be submitted to the jury on that issue, without protest.

The judgment accordingly is affirmed. All concur.