## THE STATE v. E. A. BUNTON, Appellant.

Division Two, May 28, 1926.

1. **DEPOSIT IN BANK: For Safe-Keeping: Bailment: Embezzlement: Larceny.** Where a note is placed in a bank solely for safe-keeping, the relation created is that of a naked bailment, and the owner does not part with the legal possession or the right to control or dispose of the note, and confers no power upon the bank other than that of custodian; and if the president causes the note, with his indorsement thereon, to be transferred to the bank, and the amount thereof to be credited to his account with the bank, and thereafter checks it out, his act is criminal conversion, and in such case proof of a trespass, necessary in ordinary cases of larceny, is unnecessary, and an acquittal of a charge of embezzlement does not relieve him of a conviction for larceny.

2. ———: ———: ———: **Right to Possession: Fraud.** Bailment cannot be built upon fraud, but is grounded upon a lawful transaction entered into by both parties, which means that the bailee is custodian, but the right to legal possession remains in the bailor. A bailment created by the deposit of a note with a bank for the sole purpose of safe-keeping does not carry with it the right of the bank to the legal possession of the note; and if the president of the bank, regardless of the capacity in which he attempts to act, indorses the note as a manifestation of his ownership, and directs that it be placed among the bank's securities and entered on its books as a bank asset, and that the amount of money it represents be placed to his credit, and these directions are obeyed, and thereafter he uses the note to pay the bank's debts, his every act is fraudulent, and he is guilty of larceny.

3. **INSTRUCTIONS: Based upon Assumptions.** Instructions based upon assumptions, and not upon the evidence, and which do not state the law applicable to the case, should be refused.

4. **ARGUMENT TO JURY.** A remark by the prosecuting attorney in his argument to the jury, although an unnecessary statement and wholly immaterial, but nevertheless simply a statement of a fact which they already know, and could not therefore have prejudiced the rights of defendant, is not reversible error.

Corpus Juris-Cyc. References: **Bailments,** 6 C. J., Section 33, p. 1105, n. 58; p. 1106, n. 82. **Banks and Banking,** 7 C. J., Section 306, p. 630, n. 98, 99, 1. **Criminal Law,** 16 C. J., Section 2485, p. 1045, n. 39; 17 C. J., Section 3561, p. 217, n. 61 New; Section 3638, p. 297, n. 20. **Larceny,** 36 C. J., Section 54, p. 751, n. 61; Section 55, p. 751, n. 63; Section 484, p. 906, n. 56 New; Section 494, p. 910, n. 15.

Appeal from Andrew Circuit Court.—*Hon. Thomas B. Buckner,* Special Judge.

AFFIRMED.

*S. K. Owen, K. D. Cross* and *Eastin & McNeely* for appellant.

(1) The note in question was left with the bank for safe-keeping; but at the time of its sale to Wolff it was in the bank's note file and was in the bank's note register. From the note file it was sold to Wolff and Wolff gave the bank a check for it on his deposit in the bank, the bank receiving the money for it. If the possession was lawful in the first instance and there was a crimi-

nal misappropriation of the thing possessed, it was embezzlement and not larceny. 20 C. J. 410; 36 C. J. 775; State v. Fink, 186 Mo. 50; State v. Custer, 170 Mo. App. 539; State v. Casey, 207 Mo. 1, 123 Am. L. R. 367, 11 A. L. R. 803, note. (2) If the note in question was lawfully in the possession of the bank in the first instance, then, even if the defendant aided the bank to convert it, he was not guilty of larceny. 36 C. J. 774; State v. Casey, 207 Mo. 1. (3) There are two counts, larceny and embezzlement. Defendant was guilty of neither. Under no theory was he guilty of larceny of which he was convicted in this case. State v. Casey, supra. (4) Since under all the evidence the note was left with the bank (the owner says with the cashier) and the cashier entered it in the bank's note register as an asset of the bank (the entry is in the cashier's handwriting), then if, as defendant claims, he sold it in good faith, as an officer of the bank, out of the note file of the bank, and as is conceded, the bank got the money for it, he could not have been guilty of larceny, and it was error to refuse defendant's Instructions E, F, and G, and in the instructions given to fail to refer to defendant's main defense and not to include any instruction whatever upon defendant's theory of the case. State v. Collins, 292 Mo. 102; State v. Slusher, 301 Mo. 285. (5) The court erred by his rulings and remarks indicating an attitude of mind on the part of the court adverse to the defendant and calculated to influence the decision against him and placing defendant at a disadvantage before the jury. State v. Davis, 217 S. W. 87; State v. Drew, 213 S. W. 106; State v. Jones, 197 S. W. 156.

*North T. Gentry,* Attorney-General, and *James A. Potter,* Assistant Attorney-General, for respondent.

(1) There being no evidence to the effect that the Exchange Bank customarily accepted notes and securities for safe-keeping, and no evidence that it ever au-

thorized any of its employees or officers to accept notes
or securities for safe-keeping, this court cannot find nor
presume that the Redmond note was taken into the
bank under such circumstances as to constitute a bail-
ment between Mrs. Roloson, the owner of the note, and
the bank. If a bailment arose from the transaction at
all it was a bailment between the owner of the note and
the individual employee who received the same, and
while the evidence fails to show which particular em-
ployee received the note, it does show that such employee
was not the defendant. It necessarily follows that the
defendant committed a trespass against the possession
of such employee when he sold the note, and he was there-
fore guilty of larceny and not embezzlement. Instruc-
tion number nine given for the State authorized the jury
to convict the defendant of embezzlement if the jury be-
lieved the defendant was in lawful possession of the note
as a bailee. By its verdict the jury found as a fact that
the defendant was not in the lawful possession of the note
as a bailee. The jury evidently believed that the em-
ployee who received the note was a bailee and that de-
fendant's act in selling the note was a trespass against
the possession of such employee and a theft from such
bailee. State v. Moore, 101 Mo. 316; Cote v. Gillette,
186 S. W. 538; State v. Cunningham, 51 Mo. 479; Sedg-
wick v. Nat. Bank, 295 Mo. 230; Fitzsimmons v. Com-
merce Tr. Co., 200 S. W. 437; United States v. Allen, 150
Fed. 152; People v. Belden, 37 Cal. 51; Colip v. State, 153
Ind. 584; Watkins v. State, 207 S. W. 926. (2) Under
no theory of the case was the bank or the defendant in
legal possession of the note in controversy. At most the
bank and its several employees had merely the care and
custody of the note, the constructive possession thereof
remaining in the real owner; hence, the act of the de-
fendant in selling the note involved a trespass upon the
constructive possession of the real owner. Chanock v.
United States, 267 Fed. 612; Boswell v. State, 1 Ala.
App. 178; Ludlum v. State, 69 So. 255; Commonwealth
v. Doherty, 127 Mass. 20. ''Possession and custody are

in the law of larceny widely distinguishable.  There can be no trespass against the custody, it is always against the possession, and it can be committed as well by the custodian,as any other person.''  2 Bishop's New Criminal Law (8 Ed.) p. 826; Kelly's Criminal Law (3 Ed.) p. 586; Shipp v. Patton, 126 Ky. 65; 1 Words & Phrases (2 Series) p. 1184.  One merely having the custody of goods may commit larceny thereof. State v. Barney, 57 So. 598; People v. Barnes, 143 N. Y. Supp. 885; Jenkins v. State, 62 Wis. 49.; People v. Perini, 94 Cal. 573; United States v. Weisberg, 258 Fed. 284; Smith v. State, 227 S. W. (Tex.) 1105; People v. Brenneauer, 166 N. Y. Supp. 801; State v. Hatcher, 76 So. (Fla.) 694; State v. Keelen, 203 Pac. (Ore.) 306; State v. King, 72 So. 552; United States v. Atkinson, 289 Fed. 935; Rosenblum v. State, 98 So. (Ala.) 216; Warmoth v. Commonwealth, 81 Ky. 133; Talbert v. United States, 42 App. (D. C.) 1.

(3)  Even though the court may believe that the conduct of McClure and the employee of the bank who received the note about March 19, 1919, constituted a bailment as between the bank and the owner of the note, Mrs. Roloson, the tortious acts of the employees of the bank whereby they entered the note as an asset of the bank and gave the defendant credit for the value of the note amounted to an attempted sale thereof and terminated the bailment, and the subsequent action of the defendant in selling the note and permanently depriving the owner thereof constituted larceny.  When the bailment was ended the constructive possession of the note reverted to the real owner and the sale of the note by the defendant necessarily involved a trespass against such constructive possession.  Johnson v. People, 113 Ill. 99; Nichols v. People, 17 N. Y. 114; State v. Fairclough, 29 Conn. 47; Commonwealth v. Davis, 104 Mass. 548; 17 R. C. L. 42, sec. 47; State v. Ruffin, 164 N. C. 416; Note, 47 L. R. A. (N. S.) 852; 2 Bishop's Crim. Law, (9 Ed.) p. 630; 2 Horton's Crim. Law (11 Ed.) sec. 1209, p. 1426; Emerson v. Fisk, 6 Me. 200; Crump v. Mitchell, 34 Miss. 449; Sanborn v. Coleman, 6 N. H. 14; Johnson

v. Whittemore, 27 Mich. 463; Rankin v. Sheppardson, 89 Ill. 445; Partridge v. Philbrick, 60 N. H. 556; Lovejoy v. Jones, 30 N. H. 164; Smith v. Stewart, 5 Ind. 220.

WALKER, P. J.—In February, 1923, the defendant was indicted by the grand jury of DeKalb County for larceny and embezzlement. The charge was in two different counts of the same indictment. He took a change of venue to Andrew County and was there tried in November, 1924, his trial resulting in a conviction for the larceny and an assessment of three years' imprisonment in the penitentiary, and an acquittal of the embezzlement.

He was president of the Exchange Bank at Maysville, DeKalb County, from the year 1911 to January, 1923, when the bank failed. Susan Duncan had been cashier of the bank for several years prior to and at the time the transaction occurred out of which this prosecution arose.

On March 19, 1919, A. C. Redmond borrowed three thousand dollars from Al. J. Hitt, Redmond giving his note therefor, secured by a mortgage on land in DeKalb County. Prior to making the loan Hitt had arranged to dispose of the note to Finley McClure, the agent of the latter's sister, Alice Roloson. As soon as the loan was made Hitt transferred the note to Alice Roloson. About March 20, 1919, Finley McClure, as the agent of Alice Roloson, took the note and mortgage to the Exchange Bank of DeKalb County and left it there for safe-keeping. He testified that he took the note to the bank, presented it at the window and left it there for safe-keeping and the convenience of the maker when he wanted to pay the interest; that he left the note with one of the employees of the bank, who was at the window; he did not recall that the defendant was present at the time, and did not remember to which employee he delivered the note.

Susan Duncan testified that she did not know the note was in the bank until June 18, 1921. McClure's cross-examination authorizes the conclusion that he left

the note with Susan Duncan, but he did not positively so testify.

On June 18, 1921, the defendant, who had evidently learned that the note had been deposited in the bank, told Susan Duncan to give his account credit for the amount of it, namely, three thousand dollars. On that date she made a deposit slip for three thousand dollars as representing the principal of the Redmond note and placed it to the credit of the defendant, who was at the time overdrawn in the bank; and the defendant later checked out the three thousand dollars. At the time defendant gave Miss Duncan this direction (June 18, 1921), she placed the Redmond note in the bank's note case as a part of its assets. The bank note register shows that the note was entered as a bank asset on June 8, 1921; but in the light of all of the other evidence, including exhibits from the bank records, the date of June 8th is evidently an error.

December 29, 1921, Redmond, the maker of the note, made a payment of three hundred dollars thereon to Hitt, who turned it over to McClure, Alice Roloson's agent, and the latter took the three hundred dollars to the bank and requested Susan Duncan to enter a credit upon the note for that amount and to deposit the money to the credit of Alice Roloson. The defendant was not in the bank at the time. When he came in, soon afterwards, Miss Duncan called his attention to the fact that three hundred dollars had been left there to apply as a credit on the Redmond note, and that she was instructed to place that amount to the credit of Mrs. Roloson rather than to the bank, which, at the time, from the entries made under the defendant's directions, appeared to own the note. The defendant remarked that that was all right and that he had an understanding with Mr. Mc-Clure in regard to it. The three-hundred-dollar payment was then credited to Mrs. Roloson, and a check for that amount was drawn on the account of the defendant payable to the bank to make the "bank books balance."

On the 16th of December, 1922, a depositor in the bank, named Wm. Wolff, became uneasy about his account and went to the bank and requested some notes or securities to satisfy the amount the bank owed him. R. E. Shelby, who was then cashier (having succeeded Miss Duncan in September, 1922), informed the defendant of Wolff's state of mind and told the defendant he had better talk to him. The defendant and Wolff held a conversation of some length in the back room of the bank, immediately following which the defendant went to the front of the bank, procured two notes, one of which was the Redmond note, had the interest calculated on both and delivered them to Wolff in satisfaction of the amount due to him by the bank. The amount of the two notes aggregated about $9,300, which was ample to cover the bank's indebtedness to Wolff. The defendant indorsed the Redmond note in two places; one of these indorsements was made at the time the note was transferred to Wolff, the other was probably made prior thereto, but this is not definitely shown by the evidence.

There was no evidence that the bank had theretofore accepted notes or securities for safe-keeping, or that it had authorized its employees so to do. Nor was there any express testimony that it had authorized such an acceptance of the note in this instance, but all of the facts and circumstances so indicated.

The defendant offered several character witnesses and his own testimony. He testified that he did not receive the Redmond note, did not know it was in the bank until after the bank closed; that he had never spoken to Miss Duncan about it as testified by her as of June 18, 1921; that he had no knowledge of the deposit of three thousand dollars to the credit of his account on that date, which she had testified represented the proceeds of the Redmond note; that he did not know of the alleged payment of three hundred dollars on the Redmond note in December, 1921; that he did not have any conversation with Susan Duncan on that date with reference to the note, nor had he given her authority to check on his

account for three hundred dollars to make the bank books balance, as testified to by her. He further denied that on December 16, 1922, he procured the Redmond note from the bank's assets or that he calculated the interest thereon, but stated to the contrary that the deal with Wolff was really made by R. E. Shelby, the cashier, who calculated the interest thereon and handed the notes to defendant for delivery to Wolff. The defendant further testified that he did not examine the notes particularly; did not know anything about them, but assumed that they were the bank's property, and merely acted as an intermediary between Shelby and Wolff.

Defendant makes several assignments of error but his principal contention is that he may have been guilty of embezzlement, but that he is not guilty of larceny, and since the jury found him not guilty of embezzlement the case must be reversed, because the evidence does not justify his conviction for larceny.

I. It is not with the habit or custom of the bank in regard to the acceptance by it of notes and other instruments of value for safe-keeping, with which we are concerned, but the facts as applicable to this case. Aside from the denial by the defendant, all of the witnesses, except those introduced to prove the defendant's character, testified either to the fact that the note was left at the bank for the purpose stated by the agent of the owner, or to other facts tending to prove the verity of the agent's statement in that regard. Whatever legal relation was created by that act was between the owner and the bank. If it was a bailment it follows that the owner was the bailor and the bank the bailee. If the note was placed in the bank solely for safe-keeping, concerning the truth of which there is no contradictory statement, except that of the defendant, the relation created was that of a naked bailment, or one in which the note was to be kept by the bank for the owner without recompense therefor (3 R. C. L. sec. 10, p. 80 and notes). The owner or her agent in thus depositing the

*Bailment: Larceny.*

note did not part with the legal possession or the right to the control and disposition of the same; and she or her agent by such act conferred no power upon the bank other than that of a custodian. As such the bank's authority was limited to that of safe-keeping. [State v. Mintz, 189 Mo. 268; Loan & Tr. Co. v. Surety Co., 285 Mo. bot. p. 641 and cases 642; State v. Scott, 301 Mo. 1. c. 413; Shipp v. Patten, 123 Ky. 1. c. 69; Barney v. State, 5 Ala. App. 302.]

The rule has been generally announced in a case determined in one of the United States Circuit Courts of Appeals as follows: "Where property temporarily has been placed in the hands of another for a special or limited purpose, the constructive possession of same remains in the owner while the other party has the mere custody." [Atkinson v. United States, 289 Fed. 1. c. 937 and cases.]

The facts attest the limited relation created between the bank and the owner of the note by the deposit of the latter. None of these show any claim of legal possession or ownership by the bank of the note in accord with human experience concerning like transactions. The note had no indorsement thereon at the time the defendant began his criminal conversion of same, except that of Arthur J. Hitt, the original payee, who wrote his name on its back when he transferred it to Alice Roloson. Until June 18, 1921, or more than two years after the note was deposited in the bank, neither the defendant nor the cashier had any knowledge that the note was in their custody. To this fact as to herself the cashier gives affirmative testimony. The defendant evidently either then acquired or had obtained that knowledge a short time before, because on that date he directed the cashier to place three thousand dollars, the amount of the note, to his credit. His pecuniary paucity at that time is sufficient proof of the reason for his action—he being then overdrawn. It was not then claimed by him that the bank had any interest in or claim upon the note. On the contrary, it is evident that he claimed to own it or he

would not have directed the cashier to transfer it to the bank's assets to balance the credit given to him. It is a reasonable conclusion that at this time he made the first indorsement on the note by writing his name thereon. However, six months later, when the interest payment of three hundred dollars was made on the note, he directed the cashier to place this payment to the credit of Alice Roloson, instead of to the bank, and his account was debited and the bank credited with a like amount, evidenced by his check dated at the time of this transaction.

Whether this note was in the custody of the bank for the length of time shown by the evidence before its presence was claimed to have been discovered by the cashier and the defendant is immaterial, so far as it affects the relation of the latter thereto.

As president of the bank with a full knowledge, which he must have possessed, of the condition and transactions of the institution of which he had charge, if he really owned the note he would not have permitted it to lie unnoticed, not among his personal securities, but in a vault or cabinet of the bank, until the griping pressure of pecuniary necessity caused him to transfer it to the bank as security for the amount of its face value, which he had directed to be placed to his credit and which was done.

The foregoing facts, uncontradicted, except by the bare denials of the defendant, refute his claim that the note became an asset of the bank June 8, 1921, or at any other time, except through his fraudulent manipulations. These combined and connected manipulations conceived in fraud, cannot, in the terminology of the law, be otherwise characterized than as a criminal conversion, in the presence of which the proof of a trespass, necessary in ordinary cases of larceny, is unnecessary. [State v. Buck, 186 Mo. 15; State v. Scott, 256 S. W. (Mo.) 745; State v. Fuller, 306 Mo. 1. c. 491.]

It is not an uncertain test of the good faith of any transaction that its facts fit into each other with such a nicety as to form a harmonious whole and to authorize a

conclusion that admits of no contradiction and banishes controversy. Tried by this formula the facts in this case fall short of its requirements.

Until almost a year after the defendant's suspicious conduct in regard to the credit of the interest payment, which was in December, 1921, this record discloses nothing in regard to the condition of the bank. About a year later, in December, 1922, the record bears witness to the fact that the bank was then floundering in the trough of the financial sea. The uneasiness of one of its depositors, named Wolff, as to the stability of the bank and the probability of the loss of his deposits caused him to demand a settlement. The defendant, as president of the bank, after a long interview with Wolff delivered to him two notes, one of which was the note here in controversy. This transaction, except for what preceded and followed it, bears the semblance of regularity, except for the fact that a solvent bank would, upon the depositor's demand, have promptly paid him the amount due to him instead of transferring to him ostensible assets of the bank in the nature of securities.

Despite the seeming regularity of this transaction defendant denies that he participated in or assented to the same, but states that it was conducted and consummated by R. E. Shelby, who had succeeded Susan Duncan as cashier. Defendant's denial of the facts in this, as in other matters material to the determination of this case, is contradicted by every other witness who testified to a knowledge of any of these transactions. Dr. Holmes, somewhere says in piquant phrase, that "sin has many tools, but a lie is the handle to them all."

II. The legal relation between the bank and the owner of the note by reason of the deposit of the latter, having been defined, it follows as a logical sequence that no official or employee of the bank had any legal right to the possession of or power to dispose of the note. The defendant, therefore, regardless of the capacity in which he was assuming to act,

Felonious Intent.

when he first indorsed the note as a manifestation of his ownership of the same, and directed that it be placed among the bank's securities and entered upon its books as an asset, and that the amount in money it represented be transferred to his credit, was guilty of acts which constituted an unlawful obtaining of the possession of the note or a taking of the same, *animo furandi,* or with a felonious intent to convert the same to the taker's use and to deprive the owner of her property. [Sec. 3329, R. S. 1919; Farmer's L. & T. Co. v. So. Surety Co., 285 Mo. 621; State v. Smith, 250 Mo. l. c. 367; State v. Anderson, 186 Mo. 25.] Crime, like fraud, is multifarious in its phases; but it is not difficult of classification when, as in this case, one without any semblance of ownership, takes and appropriates to his own use the property of another without the latter's consent. Such was the defendant's offense. In the civil law he would be designated by the brief word "fur" as Plautus says in one of his plays, or, as the wags about the forum in the days of Cicero would have put it, "a man of three letters." We apply a harsher term to the taker and designate his offense as larceny. The evidence is ample to warrant the conclusion that the defendant is guilty of this offense and we so hold.

III.   The possession of the note by the bank being purely physical or that of a custodian it is unnecessary to notice the defendant's conclusion, drawn upon the assumption of a legal possession of the same.

**Possession: Fraud.**  It is enough to say that the evidence shows that every act of the defendant relating to this note was maculated with fraud. Whatever may have been the bank's relation this could have conferred no power upon him as an individual (and he did not pretend to act otherwise) to attempt by his indorsement to criminally convert the note and to appropriate the value of same to his own use. How or upon what basis it can be contended that a bailment was created which would carry with it legal possession in this transaction between the

owner of the note and the bank, we have difficulty in understanding. A bailment cannot be built upon fraud, but must be predicated upon a lawful transaction voluntarily entered into by both of the parties. [6 C. J. sec. 26, p. 1105 and notes.] No such condition exists here.

IV. A careful examination of the instructions given at the request of the State discloses no error therein. They meet every requirement of the law under the evidence, and the jury could not have failed to understand them and to govern themselves accordingly. The foregoing is simply said in passing, because the defendant makes no point in his brief as to the insufficiency of these instructions. Instructions E, F and G, requested by the defendant, were properly refused. They were based upon assumptions and not upon the evidence, and did not correctly state the law as applicable to this case.

Instructions.

V. It is further contended that the remark of the prosecuting attorney in his argument to the jury to the effect that ''Susan Duncan lost her money in the failure of the bank'' was improper. That it was an unnecessary statement and wholly immaterial may be conceded, but in what manner could it have prejudiced the rights of the defendant? The sole question here is as to the character of the defendant's conduct in regard to this note; and, the mere statement of the fact that in the bank's failure Susan Duncan lost her money, was nothing more than a specific oral declaration of a fact which the jury, from all of the evidence, must have known applied, not only to her, but all who had done business with the bank. The presumption must obtain in the absence of anything to the contrary, that the jurymen were men of average intelligence and the remark of the prosecuting attorney in telling them, without more, what they already well knew, could not have influenced them in the finding of their verdict. There is therefore no merit in this contention.

This case was carefully tried. All of the evidence pointed to the guilt of the defendant. In the trial he was accorded all of the rights to which he was entitled. Therefore, in the absence of any error warranting a reversal, the judgment of the trial court is affirmed. All concur.