THE STATE v. FORREST C. COCHRAN, Appellant.—80 S. W. (2d) 182.

Division Two, March 5, 1935.

*Henry S. Conrad, L. E. Durham, Hale Houts* and *Wright Conrad* for appellant.

**650**

*Roy McKittrick*, Attorney General, and *Frank W. Hayes*, Assistant Attorney General, for respondent.

WESTHUES, C.—Appellant was charged, by an indictment in the Circuit Court of Jackson County, Missouri, with the crime of embezzlement. On a trial he was convicted, and the punishment assessed was five years' imprisonment in the penitentiary. Appellant's motion for a new trial was overruled, whereupon he was sentenced, from which judgment he has appealed.

The indictment charged that appellant, Forrest C. Cochran, as the agent, clerk and servant of the Women's Christian Association of Kansas City, Missouri, received money in the amount of $2500, which he, appellant, unlawfully embezzled and converted to his own use. Appellant introduced no evidence at the trial. The principal point upon which he seeks a reversal of the judgment is that

the State failed to prove that he was the agent, clerk and servant of the Women's Christian Association and that, therefore, the evidence was insufficient to sustain the charge made by the indictment.

The Women's Christian Association was a charitable organization. Its principal objects of charity were the maintenance of the Armour Home for aged couples and the Gillis Home for orphan children. Its funds were derived from voluntary contributions and gifts. In the course of time it had accumulated an endowment fund which in the year 1917, amounted to $150,000. Prior to the year 1917, the business of investing the association's funds was transacted by a committee of the association. During this year the association designated the Liberty Trust Company of Kansas City, Missouri, as its agent for the purpose of investing the funds of the association and as depository of its securities. With a number of minor changes this arrangement was still in force in April, 1930, at which time the trust company was placed in receivership.

Appellant was president of the Liberty Trust Company during all of the years from 1917 to 1930. He and members of his family owned fifty-four per cent of the capital stock. The Liberty Trust Company did a general banking business until the year 1923, when it sold its banking business to the Liberty National Bank. It carried on its other business through the Liberty Mortgage Company of which appellant was the president. All of the stock of the Liberty Mortgage Company was held by the Liberty Trust Company.

Beginning with the year 1917, at the time the Liberty Trust Company was made the trustee and agent of the association, three separate accounts were kept by the trust company of the funds of the association, namely the Armour fund, the Gillis fund and the general fund. After the Liberty Trust Company ceased to do a banking business these separate accounts were continued in the same manner and the funds were deposited in the Liberty National Bank by the Liberty Trust Company. Checks were drawn against these funds on blanks of the Liberty Trust Company, which checks were honored by the Liberty National Bank.

The terms of the agreement, whereby the agency of the Liberty Trust Company was created, were set forth in a letter written by appellant on behalf of the trust company to the Women's Christian Association. This letter was introduced in evidence. Many of the details are immaterial to the issues in the case. Those that are material are stated in the letter as follows:

"It is our understanding that it will be our duty to invest all of said funds and to keep the same invested in such securities as shall be approved in writing by a Committee of five, or a majority thereof.

"We will keep the endowment funds of the Women's Christian Association, of the Gillis Orphans Home and of the Armour Endowment Fund, and the securities in which same are invested separate

each from the others and separate accounts shall be kept for each of said funds and the income from each of the said funds shall be deposited by us in separate accounts in this company, each account being subject to withdrawal by check of the Treasurer of the Association.

"We will, from time to time, upon the request of the proper officer of the Association, report to the Association the condition of each of the said funds and the amount of income standing to the credit of each of said funds upon our books, and will make an annual report to the Association on or before the first day of each year, giving in detail a list of the securities so held, the kind and character thereof, the face value thereof, the estimated actual value, the rate of interest, the income derived therfrom during the current year, and such other information as may be requested by the Association.

. . .

"Our charges for handling this trust will be as outlined in our letter of August 8, 1917, to Mr. Askew and are as follows:

" 'Our initial fee for accepting these securities and registering them on our books will be ⅙ of 1%.'

" 'Our annual fee for acting as custodian of the securities, collecting the income and principal when due, crediting same to the account of the Association, rendering statements and investing funds will be ¹⁄₁₅ of 1%.' . . .

"P. S. The charges of the Liberty Trust Company herein mentioned include the services of all salaried attorneys and employees of said Trust Company, unless otherwise especially provided for in writing."

Under this agreement the association turned over to the Liberty Trust Company securities and funds in the amount of $150,000. The trust company was treated, by the officers of the association, as the agent up to the time the trust company closed its doors. The Liberty Mortgage Company, mentioned above, was also placed in receivership the same day as the trust company. The Women's Christian Association filed claims against these corporations, which were allowed, amounting to approximately $200,000.

The officers of the association testified at the trial, without hesitation, that they always looked upon the Liberty Trust Company and not appellant as the agent of the association. From time to time the trust company made reports to the association of investments made for the approval or rejection of the finance committee of the association. All payments to the association of income from investments made were made by the trust company. Appellant, as president of this company, transacted all of the business with the association on behalf of the trust company. He frequently attended meetings of the board of directors and for a number of years kept the minutes of the board meetings. In July, 1925, two years after

the trust company ceased to do a banking business, the Women's Christian Association wrote appellant, as president of the trust company, a letter which read in part as follows:

"Pursuant to some conversation with you at the last Finance Board Meeting, the Women's Christian Association at its regular meeting on July 2" adopted the following resolution:

"The securities belonging to or under the control of the Women's Christian Association including funds belonging to the Margaret Klock Armour Memorial Home for Aged Couples and the Gillis Orphan's Home and now or hereafter in the custody of the Liberty Trust Company, shall hereafter *by* kept in a box in the vault of some Safety Deposit Company. of recognized responsibility.

"The President of the Liberty Trust Company shall be furnished with a key to said box but, the custodian of the vault shall be instructed that the box shall only be opened by the President of the Liberty Trust Company in the presence of the President, Recording Secretary or the Treasurer of the Women's Christian Association. This resolution shall continue in effect until set aside or modified by action of the Board of the Women's Christian Association."

The evidence introduced by the State, summarized above, not only discloses that the State failed to establish an essential fact necessary to sustain a conviction, namely that appellant was the agent, clerk or servant of the Women's Christian Association, but the evidence conclusively negatives such a fact. It was definitely established that the Liberty Trust Company and no other was the agent of the association.

■ Embezzlement is an offense created by statute. A fundamental distinction between embezzlement and larceny, universally recognized, is that in embezzlement the money or property is lawfully obtained and unlawfully converted, while in larceny the taking must always be unlawful. [20 C. J. 410, sec. 3, and cases there cited.] The elements necessary to constitute the crime of embezzlement are stated in 20 Corpus Juris, page 413, section 4, as follows:

"To make out a case of embezzlement under the statutes it is necessary to show first, that the thing converted or appropriated is of such a character as to be within the protection of the statute; second, that it belonged to the master or principal, or someone other than accused; third, that it was in the possession of the accused at the time of the conversion, so that no trespass was committed in taking it; fourth, that *accused occupied the designated fiduciary relation, and—that the property came into his possession and was held. by him by virtue of his employment or office*; fifth, that his dealing with the property constituted a conversion or appropriation of the same; and sixth, that there was a fraudulent intent to deprive the owner of his property." (Italics ours.)

And at page 421, section 12, we read the following:

"As the embezzlement statutes were designed to reach those cases in which a person converts property of which he has lawful possession by virtue of a delivery to him either by, or for, the owner, it has been held that they are limited to cases in which there is a relation of trust or confidence."

In State v. Moreaux, 254 Mo. 398, 162 S. W. 158, l. c. 160, this court said:

"Under this state of facts, it was necessary for the State to show: First, that the appellant was an agent; second, that he received the money as such in the course of his employment; third, that it was the money of the corporation; and, fourth, that he converted it to his own use. [Ex parte Hedley, 31 Cal. 108.]"

See, also, State v. Morro, 313 Mo. 98, 281 S. W. 720, l. c. 722 (2); State v. Bunton, 314 Mo. 585, 285 S. W. 97.

In the State's brief we find the following argument:

"It is true that it has been held that a corporation is a legal entity. It is also true that a corporation cannot be punished. Even assuming that at the outset the Liberty Trust Company was the agent and servant, if such technicality as urged by appellant can serve to shield him from the crime in question where he, as a matter of fact was, so far as the Women's Christian Association is concerned, the corporation, then the corpus of no trust would ever be safe. The president of any trust company, under the shield of a corporate entity, could embezzle the funds of any trust and escape with impunity."

In answer to that argument we need only to cite a few cases wherein defendants guilty of similar conduct were sentenced to the penitentiary and their convictions affirmed by this court when properly indicated. [State v. Morro, and State v. Bunton, supra.] Appellant in this case may have been guilty of having embezzled the funds of the Liberty Trust Company or he may have been guilty of larceny, depending upon the evidence, but the record before us conclusively shows that he was not the agent of the Women's Christian Association as the indictment charged. [State v. Brown, 171 Mo. 477, 71 S. W. 1031.]

The State next urges that appellant was estopped to deny that he was the agent of the association in this prosecution because he acted as such, citing State v. Heath, 8 Mo. App. 99; State v. Spaulding, 24 Kan. 1; State v. Silva, 130 Mo. 440, 32 S. W. 1007. This court in a recent case, State v. Gould, 329 Mo. 828, 46 S. W. (2d) 886, l. c. 889 (2, 3), applied the doctrine of estoppel where the defendant was found guilty of embezzlement and where he maintained that if he were guilty of any criminal act it was that of obtaining property under false pretenses and not embezzlement. We there said:

"Where a defendant, by his own criminal acts, has placed himself

in such a position that the evidence will support a conviction on either one of two theories, such as embezzlement by agent, or obtaining money by false pretenses, it should not be the duty of the court to draw fine hair-splitting distinctions and ascertain just at what moment the criminal intent was formed. The embezzlement statutes were enacted to remedy a defect in the common law. The courts should not, by strained constructions, add to the difficulties of the State in such prosecutions.''

Cases from other states and text writers on the subject were there cited and quoted. However, in that case, as in the cases cited by the State, there was evidence that the defendant received the property embezzled, as agent. There is no such evidence in the case at bar. If such evidence were present we would without hesitation invoke the doctrine of estoppel as we did in the Gould case.

The evidence discloses that in addition to maintaining three accounts, as above set forth and as was required under the trust agreement, appellant kept an account on the books of the Liberty Mortgage Company known as the ''Forrest C. Cochran Trust Account.'' The $2500, which was the subject of this prosecution, was transferred, by check, from the Armour fund to the ''Forrest C. Cochran Trustee Account'' of the Liberty Mortgage Company. The officers of the Women's Christian Association had no knowledge of any such account. Neither did they know that the funds were being deposited in the Liberty National Bank. All of their dealings were with the Liberty Trust Company from the year 1917, to the day of the closing of the trust company. There was some evidence that the $2500 item properly belonged to the general fund and not to the Armour fund and, therefore, the transfer of this fund was not a misappropriation. Be that as it may there was an abundance of evidence showing that appellant had, by concealment of the true facts and by a system of bookkeeping and false reports, misled the association as to the financial status of the investments. In some instances funds of the association were used to pay the personal obligations of appellant. Many loans had been paid to the trust company and no report thereof made to the association. Interest on these loans was thereafter regularly paid, when due, by the trust company to the association, apparently out of the principal that had been collected. The evidence of these various transactions was admitted for the purpose of showing intent. There was, therefore, ample evidence showing that appellant had been guilty of criminal conduct, but no evidence establishing an agency between the association and appellant and no evidence which would justify us in applying the doctrine of estoppel. Agency can only be created by contract, either expressed or implied. [State v. Brown, supra.] The association at no time, either expressly or by its conduct or dealings with appellant, gave appellant any authority to take possession of any of its assets, as

agent of the association. If he did take such funds or securities the taking was wrongful in its inception. [State v. Bunton, supra.] If he misappropriated the funds of the trust company he was guilty of embezzling those funds as its agent. [State v. Morro, supra.]

What we have said indicates that this prosecution must fail because the evidence failed to support the charge made by the indictment. It will, therefore, be unnecessary to discuss other points raised by the motion for new trial. The judgment is reversed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.